FILED

2018 AUG -7  PM 2: 35

Tara Inden

8353 Yucca Trail

Los Angeles CA (90046)

Pro Per, Sui Juris

**In The United States District Court For**

**The Central District of California**

---

|  |  |  |
|---|---|---|
| Tara Inden | ) | Index No. **CV18-06776**-CBm(MAAx) |
| **Plaintiff/Petitioner** | ) | |
| **vs.** | ) | **Complaint** |
| PHH HOME LOANS dba FIRST CAPITAL, | ) | **With Verification** |
| Bank of America National Assn., | ) | |
| Ocwen Loan Servicing LLC., | ) | |
| Western Progressive LLC. | ) | |
| Altisource Holdings, LLC. | ) | |
| JOHN OR JANE Does 1-10, | ) | |
| unknown investors | ) | |
| | ) | |
| Defendants(s) | ) | |

PAID

AUG - 7 2018

Clerk, US District Court
COURT 4612

---

Plaintiff alleges:

### *General Background*

1) Plaintiff institutes this setoff, recoupment and action in response to Defendants' action to foreclose on Plaintiff' Deed of Trust/Deed of Trust and dispossess Plaintiff from her property. Plaintiff requests statutory damages, actual damages, the costs of this action and attorney fees should need arise.  Plaintiff complains against Defendant(s) for multiple violations of the Truth in Lending Act, 15 U.S.C. § 1601 et seq., ("TILA"), Regulation Z, 12 C.F.R. § 226.1 et seq., promulgated pursuant to TILA, 12 U.S.C § 2601 et seq, procedural due process violations, void contracts, and Predatory Lending practices pursuant to state law.

### **Jurisdiction**

2) Jurisdiction for the state claims arise under common law fraud and California's Statute of Frauds found at California Civil Code CIV § 1624, and Pursuant to

3) Jurisdiction for the federal claims arises under, 15 U.S.C. §1640(e), and 12 U.S.C §2614., and 5 USC Sec 556 D, and violation of Seventh Amendment constitutional rights/protections, and void contracts.

4) This court has jurisdiction over the complaint because the property is situated in this district.

### **Parties**

5) Tara Inden (Hereinafter "Plaintiff"), are natural born people currently owning/living in a home residing in California.

6) Defendant(s), PHH HOME LOANS dba FIRST CAPITAL et al., (Hereinafter, PHH HOME

LOANS dba FIRST CAPITAL), is a corporation with its principal place of business at: 3000 Leadenhall Road, Mount Laurel, New Jersey 08054, et al.; Bank of America National Association, et al., (Hereinafter, Bank of America National Association), is a national bank association with its principal place of business at: 100 North Tryon Street, Suite 170, Charlotte, North Carolina 28255, et al.; Western Progressive LLC. et al., (Hereinafter Western Progressive LLC.), is a limited liability company with its principal place of business at, 1000, Abernathy Road NE; 400-2, Atlanta Georgia 30328, et al.; Ocwen Loan Servicing LLC. et al., (Hereinafter Ocwen Loan Servicing LLC.), is a limited liability company with its principal place of business at: 1661 Worthington Road , Suite 100, West Palm Beach Florida 33409, et al.; Altisource Holdings, LLC. et al., (Hereinafter Altisource Holdings, LLC.), is a limited liability company with its principal place of business at: North Town Center 1000 Abernathy Road NE, Bldg 400 Suite # 200, Atlanta Georgia (30328), et al.; JOHN OR JANE Does 1-10, unknown investors and agents.

## Factual Allegations

7) At all times relevant hereto, Defendant(s) regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, and is the person to whom the transaction which is the subject of this action was initially payable, making Defendant a creditor within the meaning of Truth in Lending Act (Herein after TILA), 15 U.S.C. § 1602(f) and Regulation Z § 226.2(a) (17).

8) On or about October 27, 2006 (alleged settlement date(s), Plaintiff would-be executed a promissory Note and a security agreement transaction with original allege-lender PHH HOME LOANS dba FIRST CAPITAL. Said transaction extended consumer credit subject to a finance charge initially payable to the original lender with other Defendant(s) Bank of America National Association as allege-assignee, with Ocwen Loan Servicing LLC as servicer and

Western Progressive LLC as trustee, and Altisource Holdings, LLC., all acting in support of the misrepresentations and elements of fraud and forgery et al discussed below herein. The transaction is one for $700,000, alleged original loan number 124489379.

9) As part of this consumer credit transaction, Defendant(s) allege to retain a security interest in Plaintiff property the location being at: 8353 Yucca Trail, Los Angeles CA 90046 and used as Plaintiff's principal dwelling.

10) The loan disclosure documents given contain fraud due to failure to consummate the agreements, lack of full disclosure, and having unclear concealed information and misrepresentations that hide relevant and material facts about the terms and conditions of the loan transaction.

11) The disclosure violations and attempt at fraud by the Original Lender and current Defendant(s) create and give Plaintiff the right to, and request this court, null and void the subject deed of trust and note.

12) As evidence of the allege-loan transaction, Plaintiff would-be signed and performed with **PHH HOME LOANS dba FIRST CAPITAL** a written promissory Note transaction. A copy of the promissory Note is attached to this complaint as "Exhibit B" and incorporated by this reference.

13) The Deed of Trust/Deed of Trust was recorded in the Los Angeles, California. A copy of the deed of trust is attached to this Complaint as "Exhibit A" and incorporated by reference here.

14) The Deed of Trust and Adjustable Rate Note are on record with their basis in erroneous amounts and dates in violation of federal and state law, e.g., TILA and RESPA creating the current

controversy about amounts owing on the loan and the need for an accounting. A copy of the "TILA Statement" is attached and marked as "Exhibit C" and by this reference is incorporated herein.

15) Despite Defendant(s)' knowledge of the previous violations and damages caused and the emotional distress it would cause against the Plaintiff initiated a foreclosure and intends to sell Plaintiff's real property without just cause.

16) Defendants were without and continue to be without showing proper evidence on record that Defendant(s), has proper standing to sue and foreclose, but initiated a foreclosure process froth with defects and errors, yet still intend to sell Plaintiff's home, evict Plaintiff from her home creating the need to enjoin/void the said foreclosure process and eviction processes.

## **Statement of Claims**

17) **Introduction:**

18) Pursuant to Rule and FRCP Rule 7(a)(1)(3), and Pursuant to Federal Rulings of Evidence, Rule 103, I make offer of proof, and present constructive notice of unconstitutional practices, for the record of the following due process and other errors and causes of action that do prejudice my case in violation of substantive Fourth, Fifth and Ninth Amendment constitutional rights/ protections I, We, Tara Inden do make complaint and make offer of proof for the record of the wrongs being done to and against me, i.e., unconstitutional practices, procedural and other plain errors and many and varied due process violations and objectionable activities. There are real material facts in dispute here.

(a)            Supervisory liability may be imposed under 1983 when an official has actual or constructive notice of unconstitutional practices and demonstrates "gross negligence" or "deliberate indifference" by failing to act. MERIWETHER V. COUGHLIN, 879 F2d 1037 (2nd Cir. 1989).

(b)            Law of trespass forbids intrusions onto land that Fourth Amendment would not proscribe. US V. HALL, 47 F3d 1091 (11th Cir 1995).

(c)            Equal protection analysis is substantially identical under the Fifth and Fourteenth Amendments. Fraternal Order of Police v. US, 152 F3d 998 (D.C. Cir. 1998).

19) Due to all the wrongs done to me the Defendant(s) is indebted to me by way of recoupment and setoff.

20)      **Void Contracts - Due Process Errors - Objections with Brief Memorandum of Law**

21) The following due process errors are present, to wit:

22)                          **Statement Of Issues To Be Decided**

23) Whether it is proper to let a non judicial foreclosure and eviction processes proceed and stand with the imminent plan to dispossess and Evict and take Plaintiff's property without a jury trial stand or to enjoin/stay/vacate the non judicial process as void. A copy of the Defendant's "NOTICE TO QUIT" is attached and marked as "Exhibit D" and by this reference is

incorporated herein.  A copy of the Defendant's "Notice of Trustee's Sale" is attached and marked as "Exhibit E" and by this reference is incorporated herein.  A copy of the Defendant's "ASSIGNMENT DEED OF TRUST" is attached and marked as "Exhibit F" and by this reference is incorporated herein.

24) Whether failure to correct the Defendant(s)' errors and/or allow Plaintiff/Petitioner to correct mistakes and seek damages in recoupment and set-off would result in a manifest injustice in this matter.

25) In order to prevent undue prejudice, whether Plaintiff/Petitioner should be allowed to submit evidence to this Court and Defendant(s)' should be required to prove standing once challenged before this Court, before Plaintiff/Petitioner is dispossessed from his/her property.

26) Whether Plaintiff/Petitioner should be allowed to exhaust all administrative remedies as well as judicial remedies before Plaintiff/Petitioner(s) is dispossessed from his/her property.

**Memorandum of Points and Authorities**

27) Evidence is discovered which shows the Defendant(s)' lacked competent witnesses and standing to empower them to foreclose and Plaintiff is due recoupment and set-offs and the non judicial process foreclosure sale and current eviction processes that need to be vacated. Petitioner(s) requests relief from said Foreclosure Sale pursuant to the First Amendment Right to Petition and Fed. R. Civ. P. 7(a)(1), and 5 U.S C. 556D, and 60(b)(1)(2) for mistake, inadvertence or excusable neglect and new evidence, or other applicable rules and Maxims of Law.

28) Here Plaintiff in a non judicial foreclosure process and sale by mistake failed to properly demand and receive validation of the debt, but as an unsophisticated consumer believed Defendant(s) demonstrated the standing to assert a claim; but Plaintiff knows otherwise now and seeks remedy if the Court believes additional evidence is appropriate, per 60(b)(2) and/or Fed. R. Civ. P. 7(a)(1), and 5 U.S.C. 556D, Petitioner requests leave to submit such evidence. **The United States Supreme Court specifically discussed Fed. R. Civ. P. 60(b) in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993), and found that the provision does not require the party seeking relief to show that he or she is faultless.** Again, applying the same "excusable neglect" standard, the Supreme Court allowed relief when a party's attorney had failed to file a proof of claim by the set deadline. *Id.* at 383. The Supreme Court recognized that "excusable neglect" by definition encompasses situations where judgment could have been avoided. *Id.* at 394.

   a.        The Maxim of Law is,

   b.        **He who mistakes is not considered as consenting.**

   c.        **Whoever** pays **by mistake** what he does not owe, **may recover it back;** but he who pays, knowing he owes nothing; is presumed to give.


29) Thus, to the extent that Defendant(s) should have provided additional or any evidence of the following: proper standing to sue and foreclose, competent custodial witnesses, original promissory Note and Deed of Trust documentation, with custodial testimony of books and records, Defendant(s)' lack proof that the foreclosing party/Beneficiary has evidence of being a secured party, real party in interest, having received proper transfer and taken proper custodial care in this matter.


30) To the extent it might be required, Plaintiff has obtained/asserts additional or new evidence concerning and in/during the non judicial foreclosure process demonstrating Defendant(s)' lack of standing to sue and foreclose, and to the extent such additional evidence is necessary to cure any mistake, inadvertence or excusable neglect, Plaintiff request that the Court take this

evidence into consideration in granting relief from the non judicial foreclosure process and default and relief from a Trustee's Sale and foreclosure process and any subsequent warrant of eviction, or the like.

31) Second, Defendant(s) PHH HOME LOANS dba FIRST CAPITAL, Bank of America National Association, Ocwen Loan Servicing LLC., Western Progressive LLC. all have a good faith duty to speak and bring forth all relevant and material evidence, and Defendant(s) breached that duty resulting in a Trustee's Sale and subsequent eviction processes to vacate and set aside for fraud.

a.       Fraud and deceit may arise from silence where there is a duty to speak the truth, as well as from speaking an untruth. Morrison v. Coddington, 662 P. 2d. 155, 135 Ariz. 480(1983).

a.       "Suppression of a material fact which a party is bound in good faith to disclose is equivalent to a false representation."  Leigh v. Loyd, 224 P.2d 356, 74 Ariz. 84 (1952).

The 5th Circuit Court established what the Defendant must prove in order to meet this good faith duty when it held:

(a)              To recover on a promissory note, the plaintiff (herein is Defendant) must prove: (1) the existence of the note in question; (2) that the party sued signed the note; (3) that the plaintiff is the owner or holder of the note; and (4) that a certain balance is due and owing on the note.  See In Re: SMS Financial LLC. v. Abco Homes, Inc. No.98-50117 February 18, 1999 (5th Circuit Court of Appeals.)

32) To meet this burden of proof the original documents needs to be presented to the Plaintiff and the Court, for no other documents are substantial proof pursuant to and in the spirit of 5 U.S C.

556D.  To start, the relevant documents are: the original Note and Deed of Trust – Front and Back, the note and deed of trust/Deed of Trust assignments Front and Back with allonges, the chain of title, the books - ledger - records, and custodian first-hand testimony in support of the relevant instruments and documents.

33) Here Defendant(s) is lacking, suppressing and/or concealing the original documents books, records, ledger, assignments and chain of title, yet conveying a false impression in presenting copies or no material docs at all, like the original Adjustable Rate Note, assignments and chain of title, or custodial affidavit(s). Conveying a false impression their hearsay, speculative evidence/copies or claims are competent to fulfill its purpose of supporting subject matter jurisdiction to exercise a foreclosure action, and Foreclosure Trustee's Sale, therein, conveying this false impression makes Defendant(s)' claims equivalent to false statements.

(a)                 "When one conveys a false impression by disclosure of some facts and the concealment of others, such concealment is in effect a false representation that what is disclosed is the whole truth."  State v. Coddington, 662 P.2d 155, 135 Ariz. 480 (Ariz. App. 1983). Suppression of evidence material to guilt or punishment violates defendant's (or herein Plaintiff's) fundamental due process rights.  DOWTHITT V. JOHNSON, 230 F3d 733 (5th Cir. 2000).

34) Therefore, the Foreclosure  Trustee's Sale and eviction processes need to be stayed/vacated and foreclosure process set aside for fraud by concealment, misrepresentation and suppression of facts which should be disclosed.

**In the original foreclosure non judicial process the herein Plaintiff was allege-borrower and the herein Defendant(s) is/are the alleged beneficiary, or agent or alleged-original lender, or trustee,**

## Causes with Brief Memorandum of Law

### First Cause of Action

### Defendants' Claim in Recoupment

### Violations of the Federal Truth In Lending Act

### Fraud / Attempted Fraud By Concealment

35) Plaintiff hereby re-alleges, repeats and incorporates by this reference all allegations and paragraphs above and makes them a part of this claim, and states:

36) Under 15 U.S.C. § 1640(e) and California Law, Plaintiff (s) asserts these claims and defenses in recoupment, and hereby counter claims pursuant to 1640(e) as a response to Defendant's action to foreclose on Plaintiff's Deed of Trust/deed of trust loan and actions to start eviction processes.

37) In this instant action the Defendant(s) fails to provide Plaintiff certain truthfull disclosures in accordance with federal law, per the Truth in Lending Act, hereinafter "TILA." The disclosure TILA requires are as follows:

a.        Defendant(s) fail to disclose in the proper manner the finance charge as 12 CFR §226.4 requires.

b.        Defendant(s) fail to disclose in the proper manner the general disclosures clearly and conspicuously in writing, in a form the Plaintiff could keep 12 CFR §226.17(a)(1) requires.

c.        Defendant(s) fail to disclose in the proper manner the preliminary disclosures as 12 CFR §226.19(a), (a)(2), (b), (b)(1) and (b)(2)(B) requires.

d.        Defendant(s) fail to disclose in the proper manner the Itemization of Amount Financed as 12 CFR §226.18(c) requires.

e.        Defendant(s) fail to disclose in the proper manner the required disclosures under 15 USC §1638(a)(2)(B).

f.        Defendant(s) fail to disclose in the proper manner the Finance Charge as 12 CFR §226.18(d) requires.

38) Further, there appears to be a failure to give the homeowner the proper pre-disclosures which is a material serious violation of TILA. The pre-disclosure missing and/or ineffective are:

    a)        TILA Statement

    b)        HUD-1 Settlement Statement is not disclosed at all

c)        Good Faith Estimate/Itemization of Amount Financed

d) "The Court of Appeals maintains that TILA does not permit a creditor to delegate disclosure responsibilities to another and that the disclosures needed to have been made by Sky Bank. The Act (and the regulation that implements it) is clear in that it states at 12 C.F.R. § 226.17 that "[t]he creditor shall make the disclosures...clearly and conspicuously in writing, in a form that the consumer may keep." And at 12 C.F.R. § 226.18 it states "[f]or each transaction, the creditor shall disclose the following information..." Duties required by "the creditor" are referred to several times in the Act. It was determined that the creditor, and the creditor alone, has the disclosure responsibility."

e) Vallies v. Sky Bank:  http://www.bankersonline.com/infovault/courtwatch.html

f) 12 C.F.R. Section 226.17(b) Time of disclosures.

g) 3. Disclosures provided on credit contracts. Creditors must give the required disclosures to the consumer in writing, in a form that the consumer may keep, before consummation of the transaction.

39) Failure to Meet Proper Consumer Standard for Consummation:

40) Lender is without properly signing the loan and thereby consummating the contract with borrower. The standard by which the Lenders are required to execute contracts for Deed of Trust loans is unsophisticated consumer standard in plain English language. As such the borrower expects that the lender would make its agreement in writing, by contract with the borrower in like manner as the borrower makes the agreement.  This is not the case. The contract is a one sided agreement not signed by agent of the Lender and there is no disclosure to the unsophisticated consumer that this is the case.

41) The true consummation date is unknown since this transaction underwent additional material negotiations while in the MERS system and/or other monetization/securitization processes.

42) An examination of a copy of the Deed of Trust in County Records yields the fact that there is no agreement on the part of the Lender to provide due consideration for the contract since there is no signature for an agent signing on behalf of the Lender in the Deed of Trust document. The Deed of Trust contract is unenforceable and illusory in the sense of it being hopelessly or deceptively one-sided since it never contained agreement by both parties to provide due consideration, the Creditor's part and agreement missing.

a.      No contract exists unless the parties agree on all of the material terms and conditions of the contract and nothing is left to some future agreement. BROWNING V. PEYTON, 918 F2d 1516 (11th Cir. 1990)

b.      Contracts are illusory in sense of hopelessly or deceptively one-sided, if they are fraudulent, unconscionable, or the result of undue influence (Undue Influence - improper influence that deprives a person of freedom of choice or substitutes another's choice or desire for the person's own compare coercion, duress, necessity ). TRUCK INS EXCHANGE V

ASHLAND OIL, INC., 951 F2d 787 (7th Cir. 1992)

c.      Whenever possible courts should Look in plain language of contract to resolve any question of fact or interpretation. ALEMAN FOOD SERVICES INC. V. US, 994F2d 819 (Fed. Cir 19930) HILLS MATERIAL CO. V. RICE, 982 F2d 514 (Fed. Cir. 1992)

43) Furthermore, here the lender uses the word "Loan" but does not carry out a loan according to the plain English language understanding of the word to the unsophisticated consumer allege-borrower/Plaintiff. Banks/lenders use the homeowner's credit/Promissory Adjustable Reate Note to perform an exchange that results in credit to the homeowner's/borrower account to fund the allege-borrower's loan. In that/this case the homeowner is provided with a form of exchange service by the bank/lender but not a "loan" in the common understanding of the word. This is not clearly explained to the allege-borrower and the Plaintiff herein is thereby deceived concerning the true nature of the transaction.

a.      All Truth in Lending Act (TILA) disclosures must be accurate, and lenders are generally strictly liable under TILA for inaccuracies, even absent showing that the inaccuracies are misleading. Smith v. Cash Store Management, INC., 195 F3d 325 (7th Cir. 1999)

44)      The Maxim of Law is:
      a.      Many things can be implied from a few expressions; and
b.      Fraud lies hid in general expressions.
c.      A general expression implies nothing certain.

45) This is false, and dishonest or misleading information, and then recording this false information into Official County public records. This is notary misconduct for performing an acknowledgement using false or misleading information; This disqualifies the notary per California Government Code Sec. 8214 and 8214.1 et seq., which by operation of law should

void the instrument in which the false information is contained.

46) This Notary Acknowledgment is a false certification act by a notary public in violation of California Government Code Section 8214 and 8214.1 et seq. –

47) 8214.  For the official misconduct or neglect of a notary public, the notary public and the sureties on the notary public's official bond are liable in a civil action to the persons injured thereby for all the damages sustained.

48) 8214.1.  The Secretary of State may refuse to appoint any person as notary public or may revoke or suspend the commission of any notary public upon any of the following grounds:

49)   (a) Substantial and material misstatement or omission in the application submitted to the Secretary of State to become a notary public.

50)   (b) Conviction of a felony, a lesser offense involving moral turpitude, or a lesser offense of a nature incompatible with the duties of a notary public. A conviction after a plea of nolo contendere is deemed to be a conviction within the meaning of this subdivision.

51)   (c) Revocation, suspension, restriction, or denial of a professional license, if the revocation, suspension, restriction, or denial was for misconduct based on dishonesty, or for any cause substantially relating to the duties or responsibilities of a notary public.

52)   (d) Failure to discharge fully and faithfully any of the duties or responsibilities required of a notary public.

53)   (e) When adjudicated liable for damages in any suit grounded in fraud, misrepresentation, or for a violation of the state regulatory laws, or in any suit based upon a failure to discharge fully and faithfully the duties as a notary public.

54)   (f) The use of false or misleading advertising wherein the notary public has represented that the notary public has duties, rights, or privileges that he or she does not possess by law.

55)   (g) The practice of law in violation of Section 6125 of the Business and Professions Code.

56)   (h) Charging more than the fees prescribed by this chapter.

57)   (i) Commission of any act involving dishonesty, fraud, or deceit with the intent to substantially benefit the notary public or another, or substantially injure another.

58)   (j) Failure to complete the acknowledgment at the time the notary's signature and seal are affixed to the document.

59)   (k) Failure to administer the oath or affirmation as required by paragraph (3) of subdivision (a) of Section 8205.

60)   (l) Execution of any certificate as a notary public containing a statement known to the notary public to be false.

61)   (m) Violation of Section 8223.

62)   (n) Failure to submit any remittance payable upon demand by the Secretary of State under this chapter or failure to satisfy any court-ordered money judgment, including restitution.

63)   (o) Failure to secure the sequential journal of official acts, pursuant to Section 8206, or the official seal, pursuant to Section

64) 8207, or willful failure to report the theft or loss of the sequential journal, pursuant to subdivision (b) of Section 8206.

65)   (p) Violation of Section 8219.5.

66)   (q) Commission of an act in violation of Section 6203, 8214.2,

67) 8225, or 8227.3 of the Government Code or of Section 115, 470, 487, or 530.5 of the Penal Code.

68)   (r) Willful failure to provide access to the sequential journal of official acts upon request by a peace officer.

69) The notary acknowledgment is a false representation of the truth, and the signature it acknowledges is not a lawful bona fide signature because it is in existence under false pretenses in a false notary acknowledgment. The Maxim of Law is "Deliberate falsehood in one matter will be imputed to related matters."

70) Lack of Due Notice and Disclosure:

71) Here there is a failure to give proper notice. Per the Deed of Trust paragraph 15, the allege-borrower, homeowner, must be given due notice, but here she is not given proper noitce in the ASSIGNMENT DEED OF TRUST et al.

72) The ASSIGNMENT DEED OF TRUST filed in official court records in Bankruptcy Court Case #2:12-bk-39839-VZ contains material alternations an element of foregery and notary violations nulling and voiding the document.

73) The ASSIGNMENT DEED OF TRUST filed in court is missing 1) the Raised Seal Bar Code-Upper Right corner and 2) Missing the word written " Concurrently" and 3) Missing the Tax Lot # on the left side that is present on the ASSIGNMENT DEED OF TRUST filed in county records. These material alterations demonstrate elements of forgery on the part of Defendant(s).

74) Further, Brian Burnett is a known Robo-signer in the State of Massachusetts and the "Assignment Deed of Trust" has a penalty of perjury statement signed by Anna Ramsey falsely stating that Brian Burnett signed that document in her presence which is clearly false and "Notary Fraud" because she is intentionally verifying a robo signed signature created by a person without knowledge of the facts being attested to.

75) Furthermore, by definition a "Notice" contains fact and is given to one or more whose interests are involved and, therefore, they have a right to know the facts, and the one giving Notice has a

duty to communicate. Here the homeowner' interest are involved and they have a right to know and, therefore, the allege-lender has a duty to communicate, but does not inform the homeowner. Upon due consideration and investigation the homeowner concludes she did not receive notice of the assignment deed of trust et al. by mail which is required in the Deed of Trust, and Adjustable Rate Note,

76) The homeowner' Deed of Trust contain a notice clause at paragraph 15, and Notice is to be given to one or more whose interests are involved. And here homeowner' interests are involved so there should be notice that contains these undisclosed facts because the homeowner have a right to know the facts, and here, the alleged-lender/creditor, et al., have a duty to communicate and give truthful and proper Notice.

77) The Need for "Truthful Disclosure" in the Deed of Trust and Note Terms and Conditions is Covered and Required by Truth in Lending Act (TILA):

78) Further, here the alleged-original lender fails to disclose in the deed of trust and adjustable rate note contracts and, therefore, the required TILA disclosures, the true costs of credit since the terms of the legal obligations between the parties which should be reflected in the contracts are not reflected; but the fact is the truth concerning the legal obligations of the parties is not revealed in these contracts. T

79) The practice of failing to disclose true material facts in the subject deed of trust and adjustable rate note agreements/contracts null and voids the deed or trust and note and disclosures because it fails to comply with General Disclosure Requirements at Regulation Z at 12 CFR §226.17(a)(1) requires. and 12 C.F.R. 226.17(c)(1), et al.,

80) "(c) Basis of disclosures and use of estimates. 1) The disclosures shall reflect the terms of the legal obligation between the parties."

81) **Fraud / Attempted Fraud By Concealment:**

82) Further, Plaintiff in the process of preparing for the filing of this complaint became aware of the original lenders and agent(s) fraud and/or attempted fraud.

83) Do to the nature of the frauds involved especially concerning the lack of disclosure pertaining to the securitization/monetization or similar process the Plaintiff is unaware of the names of the parties involved.  Plaintiff is currently ignorant of the true names and capacities of defendants sued herein as DOES inclusive, and therefore sues these defendants by such fictitious names. Plaintiff intends to amend this complaint with their true names and capacities when ascertained.

84) The Defendant(s) attempts of commit a fraud and/or fraud by concealment:

85) Here in the creation of the loan and for foreclosure process the lender has a duty to disclose the truth but makes a false statement(s) by concealing the true nature of the transaction and its connections to a securitization and/or monetization process and all the parties and benefits and payoffs involved.

86) Also, in the instant action the lender makes a false statement in failing to reveal the true nature and procedures and process behind the use of the word "Loan' and how the lender arranges to fund the homeowner's transaction account without risking its own funds, or all of its own funds, or that of its depositors or investors.

87) The lender also makes a false statement and suppresses the truth by concealing to whom payments are made and/or from where the funds for loan are obtained, and by letting it seem to the Plaintiff the transaction is consummated and all material matters to the Mortgage and Promissory Note agreements/contracts are settled and agreed upon by all parties, but the lender makes no expressed written agreement by placing a signature to the contracts in agreement to

the lender's obligations under the contract. The lender actually providing a loan according to the understanding of the unsophisticated consumer borrower/Plaintiff in this action is not the case according to banking industry publications - Federal Reserve Bank of Chicago, Two Faces of Debt, p.19 - First published in 1953 and Federal Reserve Bank of Chicago, Modern Money Mechanics, p. 6 - First published in 1975.

88) **To my information the relevant banking publication and statements are as follows:**

a.   Federal Reserve Bank of Chicago, Two Faces of Debt, p.19 - "A deposit created through lending is a debt that has to be paid on demand of the depositor, just the same as the debt arising from a customer's deposit of checks or currency in the bank."

b.   Federal Reserve Bank of Chicago, Modern Money Mechanics, p. 6 - "Of course they do not really pay out loans from the money they receive as deposits. If they did this, no additional money would be created. What they do when they make loans is to accept promissory notes in exchange for credits to the borrowers' transaction accounts."

89) Since the lender did not agree in writing to the obligations of the contract, and has thousands of dollars in not properly accounted for funds paid out, it appears that the lender is involved in the same or equivalent banking scheme that uses the word "Loan" but does not carry out a loan according to the "plain English language" understanding of the word to the unsophisticated consumer allege-borrower/Plaintiff. Banks/lenders use the homeowner's credit/promissory note to perform an exchange that results in credit to the homeowner'/borrowers' account to fund the allege-borrowers' loan. In this circumstance the homeowner is provided with an exchange service by the allege-lender but not a true "loan" in the common understanding of the word "loan." This is not explained to the allege-borrower/Plaintiff herein and allege-borrower is thereby deceived concerning the true nature of the transaction.

90) The loan promissory note in this transaction was setup to allege-borrower's knowledge as a promise to by borrower and which is a negotiable instrument with an unconditional promise to pay.  The securitization/monetization or similar process changes the nature of the promissory note to a non-negotiable instrument with a conditional promise to pay based on classes of investment and tranches the investors chose. This change in the nature of the loan promissory note instrument was not disclosed to, or agreed to by, the allege-borrower, and Plaintiff herein. This is a deceptive practice and a lack of full disclosure from the lender to the allege-borrower/ Plaintiff.

91) All these false and misleading statements and actions being one element of this Fraud and make the loan transaction process and foreclosure process untrustworthy.

92) The Defendant then and now have a duty to disclose and fail to do so in noncompliance with applicable law and are thereby attempting a fraud be concealment.

93) These actions and statements are equivalent to what is false because as the Maxims of Law say,

    a.       Suppression of the truth is equivalent to the expression of what is false;

    b.       Concealment of the truth is (equivalent to) a statement of what is false;

    c.       A deceiver deals in generals;

    d.       Fraud lies hid in general expressions;

    e.       A concealed fault is equal to a deceit;

94) The Defendants are liable for these falsehoods because as the Maxims of Law say,

a.       The law punishes falsehood;

b.       False in one (particular), false in all;

c.       Deliberate falsehood in one matter will be imputed to related matters;

d.       Out of fraud no action arises.

95) These false statements concern material facts relating to the foreclosure action and go the heart of the plaintiff's damages in that they are a violations of statues that protect the homeowner/ Plaintiff and the lack of revealing the truth has caused the homeowner to be in this position of a foreclosure process/action starting, and having to go through the time and expense and emotional distress of fighting to save her home without just cause, another element of this fraud.

96) The false statements and deceptive disclosures or lack of clearness thereof are apparent of the face of the documents and the Defendant(s) knew/know these statements were and are false and what is being concealed and have still taken action to foreclosure and take the Plaintiff's property in an unjust manner, another element of the fraud

97) The Defendant(s) intend for the Plaintiff to depend on the falsehoods and believe that these statements and suppressions' are lawful, proper, truthful and without fault; Therefore, the Plaintiff is put in a position of being under the accusation of default when the lender's actions violate the law previous to the homeowner's failure, and if the lender was without failure to keep the law the homeowner would not be in this position; yet the Plaintiff is under the threat of losing her property because of the Defendants' intentional falsehoods and/or support thereof; this intent being another element of the fraud.

98) As a normal unsophisticated consumer, the Plaintiff did her due diligence to protect her interests and then rely on the truthfulness of the statements and would-be sign the Mortgage/Deed of

Trust and Promissory Note and make payments, this reliance being another element of the fraud.

99) The Plaintiff does suffer damage by these statements being false and as a result the Plaintiff is without the ability to make high payments she did not expect to have to pay and end up with the lender using the current foreclosure process in an attempt to take her property, this damage being another element of this fraud.

100) The loan and instrument and contract execution and performance was not carried out to my/ consumer understanding, and:

101) The nature of the "loan" is that of an exchange instead of a real loan according to my understanding at the time as an unsophisticated consumer, the unsophisticated consumer standard being the standard that applies.

102) The nature of the loan promissory note instrument was changed from a negotiable instrument with an unconditional promise to pay to a non-negotiable instrument with a conditional promise to pay based on classes of investment in the securitization or similar process,

103) The nature of both the mortgage/deed of trust and loan promissory note contracts was a form of unilateral contract against my knowledge, with a general acceptance on the part of the lender instead of a bilateral contract with both sides giving expressed agreement in written form with signatures. In this case I have given would-be expressed, but mistaken, agreement, engagement and performance with the lender not having done so,

104) **Lack of Due Notice and Disclosure:**

105) Plaintiff's Deed of Trust contains a notice clause and Notice is given to one or more whose interests are involved and here Plaintiff interest are involved so there should be notice that contains these undisclosed facts because Plaintiff have a right to know the facts, and here, as well as in matters discussed in the other causes of action the Defendants have a duty to communicate and give truthful and proper Notice.

106) And We, I, Plaintiff, was not given due "Notice" and "Disclosure" of the above procedure(s) processes and/or changes in the nature of the contracts/agreements and, therefore, the parties involved in this foreclosure process and Sale, including the original lender, and any the nominee(s), and any trustees and all beneficiaries, have exercised or participated in undue influence in this matter making the contract execution and performance illusory and hopelessly one-sided against good faith, good morals, trust, and good contracting principles.

107) Fraud and deceit may arise from silence where there is a duty to speak the truth, as well as from speaking an untruth. Morrison v. Coddington, 662 P. 2d. 155, 135 Ariz. 480(1983).

108) In addition, the courts have ruled a creditor may also violate TILA by engaging in fraudulent, misleading, and deceptive practices that conceal the TILA violation occurring at the time of closing. To often because violation are concealed or to technical for a consumer to determine consumers do not discover any violation until after they have paid excessive charges imposed by their creditors.

109) Consumers who later learn of the creditor's TILA violations can allege an equitable tolling of the statute of limitations. When the consumer has an extended right to rescind or pursue other statutory remedies because a violation occurs, the statute of limitations for all the damages the consumers seek extends to three years from the date the violation is revealed. See McIntosh v. Irwin Union Bank & Trust Co., 215 F.R.D. 26, 30 (D. Mass. 2003).

110) Therefore, the settlement disclosures failed to disclose the terms of the legal obligation between the parties which is non-compliance with TILA.

111) The Applicable laws are not followed and, therefore, the "Applicable Laws" terms of the deed of trust contract are not complied with as required by state and federal laws/statutes and agreed upon in the deed of trust.

112) By and large, these errors appear on the face of the homeowner's documents file, which originals the Trustee and Beneficiary should have access to; therefore, there is no justification for the Trustee and Beneficiary not knowing of these issues and errors and proceeding forward with foreclosure without just cause.

113) Due to the above violations the Defendants are indebted to Plaintiff by way of recoupment and setoff for fraud/attempted fraud and that by concealment

114) As a result of the above defects, errors, and violations the Defendant(s) is indebted to the Plaintiff by way of damages in recoupment and set-off pursuant to TILA 15 U.S.C. 1640 (e) and 12 C.F.R. § 226.17.

**Second Cause of Action**

**Defective - Void Deed of Trust and Void Promissory Note Contracts**

**Breach of Contract**

115)Plaintiff hereby re-alleges, repeats and incorporates by this reference all allegations and paragraphs above and makes them a part of this claim, and states:

116)Per California's Statute of Frauds found at California Civil Code CIV § 1624, the Deed of Trusts and promissory Notes are void since there is no signature on the part of agent for the lender in agreement with these contracts. The lender has not signed to provide due consideration in the contract and thereby make it binding and enforceable. Since the lender has not signed to take any risk, provide any consideration or undertake any obligations in the contract the lender has not lawfully gained any rights to enforce any provisions of the contract to appoint as "Assignee" and to foreclose, etc.... Further, the lender has not gained lawful title to be able to fulfill the contract to pass on good and clear title to the homeowner, so the lender is first to breach the contract in many ways.

117)**Breach of Contract:**

118)Plaintiff alleges the following are essential elements to the formation of a contract; and if these are not present affect the contracts enforceability: (1) the contracting parties must be capable of contracting; and here this is the case (2) the parties must consent/assent to the agreement; and here the allege-lender dose not consent to the obligations of the contract (3) the contract must have a valid object; here the object is valid and (4) there sufficient consideration must support the contract, but here the is no due consideration given by PHH HOME LOANS dba FIRST CAPITAL to the allege-borrower, Plaintiff herein. [Civ. Code §1550] Further, most agreements affecting an interest in real property must be in writing. [Civ. Code §§1091, Civ. Code 1624(a) (3), (4), (6)] Also according to California Civil Code Section 1639, "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible; subject, however, to the other provisions of this Title."

119)Here the original allege-lender and/or investor behind the lender performed an exchange with the borrower's/homeowner's promissory note and not a loan in the common sense of the word

as understood by an unsophisticated consumer.

120) By law i. e., California's Statute of Frauds found at California Civil Code CIV § 1624, the contract for sale of land is void if not in written form. **An essential element in all contracts is the agreement of the parties and since by law the contract must be in writing the essential element of the agreement of the lender must be in writing,** but no such signature on the part of the lender exists on the contracts. There is not signature for the alleged original lender in written form on the Deed of Trust and Note. The Deed of Trust and Adjustable Rate Note contracts do not bare the signature of the lender, or lender authorized agent, in agreement to the obligations of the contracts. The contracts are void for lack of consent on the part of the lender to provide consideration and undertake any obligations with regard to the contracts.

121)     **California Statute of Frauds at Cal. Civ. Code 1624(a)(3), (4), (6):**

122) (a) The following contracts are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent:

123)     (1) An agreement that by its terms is not to be performed within a year from the making thereof.

124)     (2) A special promise to answer for the debt, default, or miscarriage of another, except in the cases provided for in Section 2794.

125)     (3) An agreement for the leasing for a longer period than one year, or for the sale of real property, or of an interest therein; such an agreement, if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent is in writing, subscribed by the party sought to be charged.

126) (4) An agreement authorizing or employing an agent, broker, or any other person to purchase or sell real estate, or to lease real estate for a longer period than one year, or to procure, introduce, or find a purchaser or seller of real estate or a lessee or lessor of real estate where the lease is for a longer period than one year, for compensation or a commission.

127) Merely having the Lender name in the contracts in writing does not show consent on the part of the Lender.

    a.            The Maxims of Law is,

    b.            The expression of those things which are tacitly implied operates nothing.

128) Sign in Blank:

129) Further, here there appears to be the equivalent of a sign in blank which the Supreme Court of Massachusetts rules is invalid as a means of transferring interest in this real property form of transaction. Here there is no acceptance of possession of the interest with a signature on the part of alleged original lender, and the Massachusetts Supreme Court pursuant to U.S. Bank Nat. Ass'n v. Ibanez, 458 Mass. 637 (2011). 941 N.E.2d 40 - No. SJC – 10694 (October 7, 2010 – January 7, 2011) has declared that signing in blank, or the equivalent, is not permissible for being a legitimate means of transfer for this form of transaction(s) and, therefore, said transfer is incomplete and ineffective. The Maxim of Law is, "He that gives never ceases to possess until he that receives begins to possess."

130) Without the Lenders expressed consent as required by law in written form, as land sale contracts with all elements thereof must be in written form, there is no mutual agreement demonstrated, but only general expressions of implied contract are possible as in a unilateral

contract/instrument and a unilateral type of instrument is not the intention of an unsophisticated consumer, which is the consumer standard that applies in residential home deed or trust/Deed of Trust transactions.

a.　　　　　　　The Maxims of Law are,

**b.　　　　　　　The essence of a contract being assent, there is no contract where assent is wanting.**

c.　　　　　　　Consent makes the law. A contract is a law between the parties, which can acquire force only by consent.

d.　　　　　　　Consent makes the law: the terms of a contract, lawful in its purpose, constitute the law as between the parties.

e.　　　　　　　A general expression is to be construed generally.

f.　　　　　　　A general expression implies nothing certain.

g.　　　　　　　General words are understood in a general sense.

**h.　　　　　　　A deceiver deals in generals.**

**i.　　　　　　　Fraud lies hid in general expressions.**

131) Fraud now exits and false representation in that the Defendant(s) is exercising provisions of the contract without gaining at some point lawful access to exercising rights to provisions of the contract(s).

132) The lender, and/or by agent, is without signing and committing to any good-faith performance in the contract(s) and is therefore not a party to the contract since parties commit to good-faith performance in a contract.

133) The lender is without agreeing to any obligations under the contract(s); there can be no binding enforceable contract without the presence and existence of obligations on the part of both/all

parties that bind the contract.

134) The lender cannot retain benefits under a contract and escape obligations of the contract

135) If this transaction was not intended by the lender as a contract, but simply as the borrower executing an instrument in favor of the lender or the like, this was not disclosed to me the Plaintiff in **plain English language** to my understanding, and is therefore not my understanding. My understanding and intent for the transaction is and was for it to be a normal contract where there is mutual expressed agreement in writing.  The lender to my knowledge did not agree in writing to the obligations of the contract that the lender is charged with by a signature, or authorized agent signing on behalf of lender. That being the case and with the other lack of full disclosure in this transaction therefore this transaction is not a bona fide sale and the foreclosure action cannot be brought per, California's Statute of Frauds found at California Civil Code CIV § 1624.

136) As an "unsophisticated consumer" in the said transaction, and that is the "standard" that applies according to TILA, the lender fits into my understanding that in a contract both/all parties must sign in agreement.

137) **Cites:**

138) Obligation of contract is law which binds parties to perform their agreement. Norfolk and Western RY. CO. v. American Train Dispatchers Ass'n., 499 US 117, 113 Led2d 95, 111 Sct 1156 (1991)

139) Party cannot be permitted to retain benefits received under contract and at the same time escape obligations imposed by contract. Grillet v. Sears, Roebuck & Co., 927 F2d 217 (5th Cir. 1991)

140) Every party to contract  commits himself to good-faith performance. Mills v. Polar Molecular

Corp., 12 F3d 1170 (2nd Cir. 1993)

141) Under New Hampshire Law, contracts signed under economic duress are voidable. ABBADESSA V. MOORE BUSINESS FORMS, INC., 987 F2d 18 (1st Cir. 1993)

142) No contract exists unless the parties agree on all of the material terms and conditions of the contract and nothing is left to some future agreement. PELLETIER V. ZWEIFEL, 921 F2d 1465 (11th Cir. 1991) BROWNING V. PEYTON, 918 F2d 1516 (11th Cir. 1990)

143) This claim of void contracts is based upon my rights with respect to constructive fraud and misrepresentation as established in, but not limited to, the cases of Tyler v. Secretary of State, 184 F.2d 101 (1962) and also El Paso Natural Gas Co. v. Kysar Insurance Co., 605 Pacific 2d 240 (1979), which stated: "Constructive fraud as well as actual fraud may be the basis of cancellation of an instrument."

144) Contracts can be avoided if they are induced by, fraud, duress, and misrepresentation. GOLDMAN V. BEQUAL, 19 F3d 666 (D.C. Cir. 1994) IN RE ALLIED SUPERMARKETS, INC., 951 F2d 718 (6th Cir. 1991) RESOLUTION TRUST CORP. V. RUGGIERRO, 977 F2d 309 (7th Cir. 1992)

145) Under Federal and Georgia law, contract is ambiguous if it is reasonably susceptible to more than one interpretation. Stewart v. KHD Deutz of America, Corp. 980 F2d 698 (11th Cir. 1993)

146) To have enforceable contract, parties must exchange consideration. Ambiguity In Contract will generally be considered against party who drafted contract. Kafka v. Bellevue, 999 F2d 1117 (7th Cir. 1993)

147) Contract interpretation begins with plain language of agreement. Foley County v. US, 11 F3d 1032 (Fed. Cir. 1993)

148) When single portion of lengthy contract is unintelligible, but yet severable from remainder, court may strike portion itself without affecting enforceability of remainder, if not, judge should direct verdict against party demanding enforcement of clause. US v. Data Translation Inc., 984 F2d 1256 (1st Cir. 1992)

149) Truth in Lending Act was passed to prevent unsophisticated consumer from being misled as to total cost of financing. Truth in Lending Act, Section 102, 15 U.S.C. Section 1601. Griggs v. Provident Consumer Discount. 680 F.2d 927, certiorari granted, vacated 103 S.Ct. 400, 459

U.S. 56, 74 L.Ed.2d 225, on remand 699 F.2d 642.

150) Purpose of Truth in Lending Act is for customers to be able to make informed decisions. Truth in Lending Act Section 102, 15 U.S.C.A. Section 1601. Griggs y, Provident Consumer Discount Co.. 680 F.2d 927, certiarari granted, vacated 103 S.Ct. 400, 459 U.S. 56, 74 L.Ed,2d 225, on remand 699 F,2d 642,

151) Truth in Lending Act is strictly liability statute liberally construed in favor of consumers. Truth in Lending Act Section 102 et seq., 15 U.S.C.A. Section 1601 et seq. Brophv v. Chase Manhattan Morgt Co, 947 F.Supp. 879.

152) Truth in Lending Act should be construed liberally to ensure achievement of goal of aiding unsophisticated consumers so that consumers are not easily misled as to total costs of financing. Truth in Lending Act, Sections 102 et seq, 102(a), 105 as amended, IS U.S.C.A. Sections 1601 et seq., 1601(a), 1604; Truth in Lending Regulations, Regulation Z, Sections 226.1 et seq., 226.18, 15 U.S.C.A. foil. Section 1700, Basile v. H&R Block. Jlt(L. 897 F.Supp. 194.

153) **Further Deed of Trust and Promissory Note Defects:**

154) The Deed of Trust and promissory Note documents have defects.  The defects prevent the party foreclosing from claiming security interest in the property in foreclosure. These defects are material to the establishment of the status of the Defendant(s) as parties with rights to enforce the provisions of the Deed of Trust and Adjustable Rate Note contracts as beneficiary or agent of beneficiary.

155) The Defendant is causing irreparable injury and harm to the Plaintiff in initiating and proceeding with a foreclosure and eviction processes without merit with basis in defective instruments that fail to demonstrate and establish the  Plaintiff is operating under the authority of a person or being a person with security interest.

156) **Lack of Borrower Signature:**

157) As a result of the above fraud, undue influence, and lack of full disclosure there is no true and

correct signature of Plaintiff Tara Inden on any contract for the subject Deed of Trust(s) and loan(s). A signature mark is with the intention to attest to the validity and authenticity of a writing which can only be done if one has full disclosure and understanding of the terms and conditions of the contract, which is not the case here.

158) **Non-Authenticated Contracts/Instruments:**

159) The Deed of Trust and Adjustable Rate Note are without being authenticated and admissible as evidence for defendant's argument since they do not bare the signature of the lender or authentic signature of Plaintiff borrower.

160) Defendant's misled Plaintiff/borrower and misrepresented the true cost of credit in non-compliance with TILA and failed to disclose to the Plaintiff, then allege-borrower the true nature of the Adjustable Rate Note and Deed of Trust contracts being a form of "Mixed Contract" by which one of the parties confers a benefit on the other, receiving something of inferior value in return, and the Plaintiff is on the end receiving inferior value exchange instead of a common loan.

a. To have enforceable contract, parties must exchange (To part with, give or transfer for an equivalent) consideration. b) Ambiguity in contract will generally be considered against party who drafted contract. KAFKA V. BELLEVUE, 999 F2d 1117 (7th Cir. 1993)

b. Truth in Lending Act was passed to prevent unsophisticated consumer from being misled as to total cost of financing. Truth in Lending Act, Section 102, 15 U.S.C. Section 1601. Griggs v. Provident Consumer Discount. 680 F.2d 927, certiorari granted, vacated 103 S.Ct. 400, 459 U.S. 56, 74 L.Ed.2d 225, on remand 699 F.2d 642.

161) Also, the Deed of Trust and Adjustable Rate Note are not signed by the Original Lender/

Defendant-assignee to make the instruments binding and enforceable. Just having the lenders name on the document, no expressed signature is equivalent to a sign in blank, which should not be permitted in this form of transaction per the Massachusetts Supreme court in the Ibanez case discussed above.

162) Ultra Viris Transaction Violation:

163) Further, the transaction is ultra viris in nature and illegitimate thereby. Defendant(s)' have received notice of this fact and and to cease and desist their wrongful actions but still proceed with unlawful efforts against me and my property, to wit,

164) "Here the subject note and deed or trust for this foreclosure action is null and void for the lack of a bona fide signature on the alleged subject note and deed of trust/mortgage due to a lack of full disclosure, and the alleged original lender engaging in an ultra viris transaction beyond its charter of existence which limits its powers and capacity.

165) For the Libellant herein according to the law definitions, my signature does not appear on the subject mortgage/deed of trust and note where the Libellee(s) claim to receive rights to collect on a debt with regard to the subject property and foreclose, but only my handwriting applies and is found on the Deed of Trust/Mortgage and Note contracts and other documents pertaining to this matter. See below definitions. There needs to be a full disclosure authentication of the documents for a signature to appear on a document, and here full disclosure is lacking so my handwriting (which does not include authenticating a document) does not rise to the level of a signature in this matter. "

166) A copy of the Notice to Cease and Desist is attached to this Complaint as "Exhibit G" and incorporated by reference here.

**Third Cause of Action**

**Injunctive Relief**

167) Plaintiff hereby re-alleges, repeats and incorporates by this reference all allegations and paragraphs above and makes them a part of this claim, and states:

168) The above causes of action show that the Defendants are with unclean hands regarding the subject deed of trust/Deed of Trust adjustable rate not transaction. Still Defendants intend to sell Plaintiff' home, and unless restrained, will sell the property and evict the Plaintiff and cause great and irreparable injury to the Plaintiff in that if the foreclosure sale takes place the Plaintiff is without the ability to redeem the property that she has lawful claim and rights to.

169) The foreclosure process and sale and eviction processes are wrongful and needs to be enjoined, because the Plaintiff lacks any other plain, speedy, or adequate remedy, and this injunctive relief requested in this Complaint hereby requesting temparary and/or permenant injunctive relief is appropriate and necessary at this time to stop and prevent irreparable harm and injury and the Plaintiff from losing her property.

170) Due to the all the above causes and violations the Defendants are indebted to Plaintiff by way of recoupment and setoff and causing the need for injunctive relief.

171) **Judicial Notice for Full Faith and Credit and Equal Protection:**

With all due respect, this court should give full faith and credit to the records, rules, laws and case cites of other states and/or federal in nature with few exceptions, and afford equal protection under the laws:

a.      **Full Faith and Credit:** United States Constitution, Article IV:

b.      Section 1. Full faith and credit shall be given in each state to the public acts, records, and

judicial proceedings of every other state. And the Congress may by general laws prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof

c.　　　　In Milwaukee County v. M. E. White Co., 296 U.S. 268, 56  S. Ct. 229, 80 L. Ed. 220 (1935). The Court held that by  including the clause in the Constitution, the Framers  intended to make the states "integral parts of a single nation throughout which a remedy upon a just obligation  might be demanded as of right, irrespective of the state  of its origin."

d.　　　　In the U.S. Supreme Court case, San Remo Hotel v. City and  County of San Francisco, California (No. 04-340) the  unanimous court decision agrees the courts cannot create  an exception to the "full faith and credit" statute (28 U.S.C. § 1738) which  Congress enacted in order to give equal weight and recognition to opinions between different state and federal courts in compliance with the requirements of  the Constitution for the United States of America.

e.　　　　**Equal Protection:**　"Fundamental right," for equal protection purposes is one that is otherwise guaranteed in the constitution. O'BAR V. PINION, 953 F2d 74 1537 (4th Cir. 1991)

f.　　　　Denial of equal protection by municipal entity or any other person acting under color of state law are actionable　　　under Sec. 1983.　MURELL V. SCHOOL DIST. NO. 1, DENVER, COLO., 186 F3d 1238 (10th Cir. 1999)

g.　　　　The Equal Protection Clause is essentialy a direction that all persons similarly situated should be treated alike. BROWN V. CITY OF ONEONTA, ny, 195 F3d 111 (2nd Cir. 1999)

h.　　　　Equal protection analysis is substantially identical under the Fifth and Fourteenth

Amendments. FRATERNAL ORDER OF POLICE V. US, 152 F3d 998 (D.C. Cir 1998)

Demand for Relief Sought

Wherefore, Plaintiff moves the Court to stay/vacate the foreclosure sale and current eviction processes for fraud, void contracts, and void foreclosure process; and

For a ruling of lack of standing to foreclose for fraud, misrepresentation and void contracts; and

For Order staying the subject foreclosure process and to vacate the non judicial foreclosure default against Plaintiff in this matter. and

For Order to Stay/Enjoin any eviction processes until after these matter are adjudicated; and

For Order to Stay/Enjoin any Warrant to Evict for void contracts and void foreclosure process pending the adjudication of these matters; and

That the Defendants(s) recover statutory civil penalty of $4,000 for each and every violation, the costs of this action and reasonable attorney fees, should the need for attorney arise, as provided by 15 U.S.C. §1640(a) (2) and (3); and

The statutory civil penalty of $1,000, the costs of this action and other applicable fees as provided by 15 U.S.C. §1640(a) (2) and (3); and

Actual damages in an amount yet to be determined by the court; and

Punitive damages in the amount of $700,000 for fraud by concealment; and

Damages in an amount yet to be determined for emotional distress; and

For the costs of suit incurred by the Plaintiff; and

For such other and further relief that the Court may deem just and proper.

**Demand for Jury Trial:**

Jury Demanded

Dated: this ___31st___ day of July_____, 2018

The Undersigning, I, Me, We Tara Inden, holder in due course of Original Jurisdiction do herewith affirm, state and say: that I, issue this **Complaint With Verification** with sincere intent in truth, that I am competent to state the matters set forth herein, that the contents are true, correct, complete, and certain, admissible as evidence, and reasonable and just to the best of my knowledge, information, and belief.

Notice to the agent is notice to the principal applies to this notice.

Notice to the principal is notice to the agent applies to this notice.

Sign Manual

Tara Inden, sui juris

Notary Public


State of: California

County of: _____


This instrument; " **Complaint With Verification**" was acknowledged before me a Notary Public in and

for the State of _____ on this_____day of the_____month

in the year of our Lord and Savior, Jesus Christ Two thousand and eighteen A.D.


_____

Name

_____ SEE ATTACHED) _____    Seal:

Signature


My commission expires:


39 of 39

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                          CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of ___LOS ANGELES___ )

On ____08·01·18____ before me, ___JASON MIRZA     NOTARY PUBLIC___
          *Date*                                    *Here Insert Name and Title of the Officer*

personally appeared ___TARA INDEN___
                                    *Name(s) of Signer(s)*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

> JASON MIRZA
> Notary Public - California
> Los Angeles County
> Commission # 2149783
> My Comm. Expires Apr 21, 2020

Signature _____
                          *Signature of Notary Public*

*Place Notary Seal Above*

──────────────── **OPTIONAL** ────────────────

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: ___COMPLAINT WITH VERIFICATION___

Document Date: _____    Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____     Signer's Name: _____
☐ Corporate Officer — Title(s): _____     ☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General             ☐ Partner — ☐ Limited ☐ General
☐ Individual    ☐ Attorney in Fact          ☐ Individual    ☐ Attorney in Fact
☐ Trustee       ☐ Guardian or Conservator   ☐ Trustee       ☐ Guardian or Conservator
☐ Other: _____      ☐ Other: _____
Signer Is Representing: _____     Signer Is Representing: _____

©2016 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

Exibits A - G

with more to come...

A copy of the Deed of Trust is attached to this Complaint as ìExhibit Aî and incorporated by reference here.

A copy of the Promissory Note is attached to this complaint as ìExhibit Bî and incorporated by this reference.

A copy of the "TILA Statement" is attached and marked as ìExhibit Cî and by this reference is incorporated herein.

A copy of the Defendant's "NOTICE TO QUIT" is attached and marked as ìExhibit Dî and by this reference is incorporated herein.

A copy of the Defendant's "Notice of Trustee's Sale" is attached and marked as ìExhibit Eî and by this reference is incorporated herein.

A copy of the Defendant's "ASSIGNMENT DEED OF TRUST" is attached and marked as ìExhibit Fî and by this reference is incorporated herein.

A copy of the Notice to Cease and Desist is attached to this Complaint as ìExhibit Gî and incorporated by reference here.

1.

# Exhibit A

# DEED OF TRUST

L.A. County Certified Copy

from Recorders Office.



**Los Angeles County Registrar-Recorder/County Clerk**

DEAN C. LOGAN
Registrar-Recorder/County Clerk

If this document contains any restriction based on race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, that restriction violates state and federal fair housing laws and is void, and may be removed pursuant to Section 12956.2 of the Government Code.  Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

RR18-1/18

12400 Imperial Highway, Norwalk, California 90650

LAvote.net



This page is part of your document - DO NOT DISCARD

## 06 2457290

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA

## 11/06/06 AT 08:00AM

**TITLE(S):**



L E A D   S H E E T

**FEE**  Code 01 - 64.00      Code T008 - 001                    D.T.T.
Code 18 - 04.00
Code 20 - 02.00

**CODE
20**

**CODE
19**

**CODE
9**___   Grand Total = $70.00                 Page Count = 20

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.        Number of AIN's Shown



THIS FORM IS NOT TO BE DUPLICATED

# Equity Title

After Recording Return To:

PHH HOME LOANS, LLC
dba FIRST CAPITAL
1401 OCEAN AVENUE
SUITE 210
SANTA MONICA, CALIFORNIA 90401

LOAN NO.: 124489379

ESCROW NO.: 06088157-610

TITLE NO.: LA0662640

PARCEL NO.: 5556-009-005

**11/06/06**

**20062457290**

——— [SPACE ABOVE THIS LINE FOR RECORDING DATA] ———

## DEED OF TRUST

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated  OCTOBER        27  ,   2006   , together with all Riders to this document.

**(B) "Borrower" is**
TARA INDEN, A SINGLE WOMAN

Borrower is the trustor under this Security Instrument.

**(C) "Lender" is**
PHH HOME LOANS, LLC dba FIRST CAPITAL

Lender is a  A DELAWARE LIMITED LIABILITY COMPANY          organized and existing under the laws of                    DELAWARE             . Lender's address is _____
1401 OCEAN AVENUE SUITE 210; SANTA MONICA, CALIFORNIA 90401
        .. Lender is the beneficiary under this Security Instrument.

**(D) "Trustee" is**
EQUITY TITLE COMPANY

**(E) "Note"** means the promissory note signed by Borrower and dated  OCTOBER       27  ,   2006   . The Note states that Borrower owes Lender _____
SEVEN HUNDRED THOUSAND AND 00/100——————————————— Dollars
(U.S. $              700,000.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  NOVEMBER      01  ,  2036  .
                                        Initials  T  I.  __ __ __ __ __

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3005  1/01
*DOCPREP SERVICES, INC.  FORM - DOTCA1-3005*
Page 1 of 15
ORIGINAL

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider    [ ] Condominium Rider    [ ] Second Home Rider

[ ] Balloon Rider    [ ] Planned Unit Development Rider    [ ] Assumption Rider

[ ] 1-4 Family Rider    [ ] Biweekly Payment Rider    [ ] Inter Vivos Trust Rider

[ ] Other(s) [specify]:

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

LOAN NO.:   124489379      Initials T I

**CALIFORNIA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**      Form 3005 1/01
*DocPrep Services, Inc.* FORM - DOTCAL-3005      Page 2 of 15
ORIGINAL

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust,  with power of sale, the following described property located in the   **COUNTY**

[Type of Recording Jurisdiction]

of   **LOS ANGELES**                                                                                :

[Name of Recording Jurisdiction]

LOT 49 OF TRACT NO. 798, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PRE MAP RECORDED IN BOOK 16 PAGES 34 AND 35 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

**ADJUSTABLE RATE RIDER(S) ATTACHED HERETO AND MADE A PART HEREOF**

**PARCEL NO.: 5556-009-005**

which currently has the address of  **8353 YUCCA TRAIL**                                                                 ;

[Street]

**LOS ANGELES**                                      , California   **90046**        ("Property Address"):

[City/Area]                                                   [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on  the  property,  and  all  easements, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and  additions  shall  also be covered by this Security Instrument.  All of the foregoing is referred to in  this  Security Instrument  as  the "Property."

BORROWER COVENANTS that Borrower is lawfully  seised  of  the  estate  hereby  conveyed  and  has the right to  grant  and  convey  the  Property  and  that  the  Property  is  unencumbered,  except  for encumbrances of record. Borrower warrants and will defend  generally  the  title  to  the  Property  against  all claims and demands, subject to any encumbrances of record.

THIS  SECURITY  INSTRUMENT  combines uniform covenants for  national  use  and  non-uniform covenants with limited variations by  jurisdiction  to  constitute  a  uniform  security  instrument covering  real property.

LOAN NO.:   124489379                          Initials  $T$  $I.$  ___  ___  ___

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                 Form 3005  1/01

*DOCPREP SERVICES, INC.*  FORM - DOTCA1-3005                  Page 3 of 15
                                                             ORIGINAL

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U. S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance

LOAN NO.: 124489379

Initials _T_ _I._ ___ ___ ___ ___

**CALIFORNIA**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**          Form 3005  1/01
*DOCPREP SERVICES, INC.* FORM - DOTCA1-3005                          Page 4 of 15
                                                        ORIGINAL

with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by,

LOAN NO.:   124489379                         Initials _T_ _I._ ___ ___ ___ ___

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3005  1/01
*DocPrep Services, Inc.* FORM - DOTCA1-3005          Page 5 of 15
                                              ORIGINAL

or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been

LOAN NO.: 124489379          Initials ___ ___ ___ ___ ___ ___

**CALIFORNIA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**          Form 3005 1/01
*DOCPREP SERVICES, INC.* FORM - DOTCA1-3005          Page 6 of 15
ORIGINAL

completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

LOAN NO.:   124489379                          Initials   T   I.   ___   ___   ___

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3005  1/01
*DocPrep Services, Inc.* FORM - DOTCA1-3005                    Page 7 of 15
                                               ORIGINAL

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

LOAN NO.:   124489379                                    Initials  T   I.   ___  ___  ___

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005 1/01
*DocPrep Services, Inc.* FORM - DOTCA1-3005                    **Page 8 of 15**
                                                   **ORIGINAL**

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has-if any-with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

LOAN NO.:   124489379                                    Initials T I.___ ___ ___ ___

**CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                Form 3005  1/01
*DOCPREP SERVICES, INC.* FORM - DOTCA1-3005                Page 9 of 15
ORIGINAL

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

LOAN NO.:   124489379

Initials   T.I.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                Form 3005  1/01
*DocPrep Services, Inc.  FORM - DOTCA1-3005*                        Page 10 of 15
ORIGINAL

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

LOAN NO.:   124489379                                    Initials   T   I.   ___ ___ ___

**CALIFORNIA**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**                    Form 3005  1/01
*DocPrep Services, Inc.*  FORM - DOTCA1-3005                    Page 11 of 15
                                                        **ORIGINAL**

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19.  Borrower's Right to Reinstate After Acceleration.**  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20.  Sale of Note; Change of Loan Servicer; Notice of Grievance.**  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

LOAN NO.:   124489379                              Initials  T I

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**          Form 3005  1/01
*DOCPREP SERVICES, INC.*  FORM - DOTCAI-3005                     Page 12 of 15
                                                    **ORIGINAL**

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligaton on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the Notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

LOAN NO.:   124489379                                    Initials  T  I.  ___  ___  ___  ___

**CALIFORNIA**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**                Form 3005  1/01
*DocPrep Services, Inc.* FORM · DOTCA1-3005                        Page 13 of 15
ORIGINAL

15

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     _____ (Seal)
                                                              -Borrower
                              **TARA INDEN**

_____     _____ (Seal)
                                                              -Borrower

                                     _____ (Seal)
                                                              -Borrower

                                     _____ (Seal)
                                                              -Borrower

                                     _____ (Seal)
                                                              -Borrower

                                     _____ (Seal)
                                                              -Borrower

LOAN NO.:   124489379

**CALIFORNIA**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**          Form 3005 1/01
*DocPrep Services, Inc.* FORM - DOTCA1-3005          Page 14 of 15
                                                    ORIGINAL

16

———————— [Space Below This Line For Acknowledgment] ————————

STATE OF CALIFORNIA
COUNTY OF Los Angeles                              } SS

On October 27, 2006 before me, Valerie Long, Notary Public personally appeared,
                                        (Notary Name and Title)
TARA INDEN

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature Valerie Long

(Notarial Seal)

VALERIE LONG
Commission # 1695266
Notary Public - California
Los Angeles County
My Comm. Expires Oct 19, 2010

VALERIE LONG
Commission # 1695266
Notary Public - California
Los Angeles County
My Comm. Expires Oct 19, 2010

LOAN NO.:   124489379

## REQUEST FOR RECONVEYANCE

**TO TRUSTEE:**
        The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes,
together with all other indebtedness secured by this Deed of Trust, have been paid in full.   You are hereby
directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey,
without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally
entitled thereto.

Dated: _____

**CALIFORNIA**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**         Form 3005 1/01
*DocPrep Services, Inc.* FORM - DOTCA1-3005         Page 15 of 15
                                          **ORIGINAL**

17

# FIXED/ADJUSTABLE RATE RIDER
# INTEREST ONLY PERIOD
### (1-Year LIBOR Index - Rate Caps)
### (Assumable after Initial Period)
### (   10    Year Interest Only Period)

THIS ADJUSTABLE RATE RIDER is made this **27TH** day of **OCTOBER** , **2006** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Adjustable Rate Note (the "Note") to **PHH HOME LOANS, LLC dba FIRST CAPITAL**

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
**8353 YUCCA TRAIL
LOS ANGELES, CALIFORNIA 90046**

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of       **5.750**   %. The Note provides for changes in the interest rate and the monthly payments as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The interest rate I will pay may change on the first day of   **NOVEMBER**  , **2011** and may change on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

LOAN NO.:   124489379                          Initials  I. I.  __ __ __ __
IndyMac Bank
Fixed/Adjustable Rate Rider - WSJ 1 Yr. Libor - Interest Only Period - Multistate
8480831 (0506)                      Page 1 of 5                       Form 5601
                    VMP Mortgage Solutions, Inc. (800)521-7291                    6/05
DOCPREP SERVICES, INC.  FORM - IB5601N-8509        ORIGINAL

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market, as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 750/1000 percentage point(s) ( 2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.750 % or less than 2.750 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO percentage point(s) ( 2.000 %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 10.750 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

LOAN NO.:  124489379
8480831 (0506)

_Docprep Services, Inc._  FORM - IB5601N-8509

Initials  T. I.

Page 2 of 5
ORIGINAL

Form 5601
6/05

19

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

**1.   UNTIL BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE IN EFFECT AS FOLLOWS:**

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**2.   AFTER BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B1 ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND THE PROVISIONS OF UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE AMENDED TO READ AS FOLLOWS:**

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

LOAN NO.:   124489379
8480831 (0506)

*Docprep Services, Inc.*  FORM - I85601N-8509

Initials  T I. ___  ___  ___

Page 3 of 5
ORIGINAL

Form 5601
6/05

If all or any part of the Property, or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Initials T.I.

LOAN NO.:   124489379
8480831 (0506)
DOCPREP SERVICES, INC.  FORM - IB5601N-8509

Page 4 of 5
ORIGINAL

Form 5601
6/05

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
-Borrower
**TARA INDEN**

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

8480831 (0506)
*DocPrep Services, Inc.* FORM - I85601N-8509

Page 5 of 5
**ORIGINAL**

**Form 5601**
6/05

This is a true and certified copy of the record
if it bears the seal, imprinted in purple ink,
of the Registrar-Recorder/County Clerk

JUL  5  2018

Dean C. Logan   REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA

A-2   Owens copy
sent via mail

A copy of the Deed of Trust is attached to this Complaint as ìExhibit Aî and incorporated by reference here.

A copy of the Promissory Note is attached to this complaint as ìExhibit Bî and incorporated by this reference.

A copy of the "TILA Statement" is attached and marked as ìExhibit Cî and by this reference is incorporated herein.

A copy of the Defendant's "NOTICE TO QUIT" is attached and marked as ìExhibit Dî and by this reference is incorporated herein.

A copy of the Defendant's "Notice of Trustee's Sale" is attached and marked as ìExhibit Eî and by this reference is incorporated herein.

A copy of the Defendant's "ASSIGNMENT DEED OF TRUST" is attached and marked as ìExhibit Fî and by this reference is incorporated herein.

A copy of the Notice to Cease and Desist is attached to this Complaint as ìExhibit Gî and incorporated by reference here.

2.

# Exhibit A

Ocwen sent this to me
via mailing through Post
Office. Notice the Stamp from

Gateway Escrow Dept.
Notice doesn't say Equity Title top left corner.
Notice No Raised Seal - Bar Code
Above upper right middle corner

DEED OF TRUST

Forged signage; Notary Fraud.

ORDER NO.:  LA0662640

## EXHIBIT "A"

LOT 49 OF TRACT NO. 798, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 16 PAGES 34 AND 35 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

After Recording Return To:

PHH HOME LOANS, LLC
dba FIRST CAPITAL
1401 OCEAN AVENUE
SUITE 210
SANTA MONICA, CALIFORNIA 90401
LOAN NO.:   124489379

ESCROW NO.:  06088157-610
TITLE NO.:   LA0662640
PARCEL NO.:  5556-009-005

———————————————— [SPACE ABOVE THIS LINE FOR RECORDING DATA] ————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in  Sections  3, 11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in this document are  also  provided  in Section 16.

(A) "Security Instrument" means this document, which is dated  OCTOBER        27     ,   2006    , together with all Riders to this document.

(B) "Borrower" is
TARA INDEN, A SINGLE WOMAN


Borrower is the trustor under this Security Instrument.

(C) "Lender" is
PHH HOME LOANS, LLC dba FIRST CAPITAL

Lender is a  A DELAWARE LIMITED LIABILITY COMPANY        organized and existing under the laws of          DELAWARE          . Lender's address is
 1401 OCEAN AVENUE SUITE 210; SANTA MONICA, CALIFORNIA 90401
                         .Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is
EQUITY TITLE COMPANY

(E) "Note" means the promissory note signed by Borrower and dated  OCTOBER        27     ,   2006    .  The Note states that Borrower owes Lender
SEVEN HUNDRED THOUSAND AND 00/100————————————————————————————————— Dollars
(U.S. $         700,000.00        ) plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  NOVEMBER      01    ,   2036

Initials  T  I.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                    Form 3005  1/01
*DocPrep Services, Inc.* FORM - DOTCA1-3005                        Page 1 of 15
                                                                  ORIGINAL

Certified to be a true &
correct copy of the original

Gateway Escrow Dept.

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider     [ ] Condominium Rider     [ ] Second Home Rider

[ ] Balloon Rider     [ ] Planned Unit Development Rider     [ ] Assumption Rider

[ ] 1-4 Family Rider     [ ] Biweekly Payment Rider     [ ] Inter Vivos Trust Rider

[ ] Other(s) [specify]:

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

LOAN NO.:  124489379      Initials _____ _I._

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3005  1/01
DocPrep Services, Inc.  FORM - DOTCA1-3005      Page 2 of 15
ORIGINAL

Certified to be a true & correct copy of the original

Gateway Escrow Dept.

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the   **COUNTY**

of   **LOS ANGELES**                                                                                                [Type of Recording Jurisdiction]
               [Name of Recording Jurisdiction]                                    :

LOT 49 OF TRACT NO. 798, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PRE MAP RECORDED IN BOOK 16 PAGES 34 AND 35 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

ADJUSTABLE RATE RIDER(S) ATTACHED HERETO AND MADE A PART HEREOF

PARCEL NO.: 5556-009-005

which currently has the address of   8353 YUCCA TRAIL                                                                              ;
                                                              [Street]

LOS ANGELES                                      , California        90046                ("Property Address"):
               [City/Area]                                                    [Zip Code]

   **TOGETHER WITH** all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

   **BORROWER COVENANTS** that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

   **THIS SECURITY INSTRUMENT** combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

LOAN NO.:   124489379                              Initials   T  I.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005 1/01
*DOCPREP SERVICES, INC.* FORM - DOTCAL-3005              Page 3 of 15
                                                            ORIGINAL

Certified to be a true & correct copy of the original

Gateway Escrow Dept.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note.  Borrower shall also pay funds for Escrow Items pursuant to Section 3.  Payments due under the Note and this Security Instrument shall be made in U. S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender:  (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15.  Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current.  Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted.  If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds.  Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current.  If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower.  If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure.  No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2.  Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:  (a)  interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full.  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3.  Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance

LOAN NO.:   124489379                                    Initials  _T_  _I._  ___  ___

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3005  1/01
DOCPREP SERVICES, INC.  FORM - DOTCA1-3005              Page 4 of 15
                                                        ORIGINAL

Certified to be a true &
correct copy of the original

Gateway Escrow Dept.

with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by,

LOAN NO.:   124489379

Initials _I_ _I._

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005 1/01
*DocPrep Services, Inc.* FORM - DOTCA1-3005                    **Page 5 of 15**
**ORIGINAL**

Certified to be a true &
correct copy of the original

Gateway Escrow Dept.

or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been

LOAN NO.:   124489379

Initials   T   I.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

*DOCPREP SERVICES, INC.*  FORM - DOTCA1-3005

Page 6 of 15
ORIGINAL

Form 3005 1/01

Certified to be a true &
correct copy of the original

Gateway Escrow Dept.

completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

LOAN NO.:   124489379                                    Initials _____ _____

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                 Form 3005 1/01
*DOCPREP SERVICES, INC* FORM - DOTCA1-3005                      Page 7 of 15
                                                        ORIGINAL

Certified to be a true &
correct copy of the original

Gateway Escrow Dept.

**9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.  Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

LOAN NO.:  124489379

Initials  T  I.  _____

CALIFORNIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

*DOCPREP SERVICES, INC.*  FORM - DOTCA1-3005

Page 8 of 15
ORIGINAL

Form 3005  1/01

Certified to be a true &
correct copy of the original

Gateway Escrow Dept.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has-if any-with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

LOAN NO.:   124489379

Initials   T. I.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
*DOCPREP SERVICES, INC.* FORM - DOTCA1-3005                Page 9 of 15                Form 3005 1/01
ORIGINAL

Certified to be a true & correct copy of the original

Gateway Escrow Dept.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

LOAN NO.:   124489379                          Initials   T. I.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT               Form 3005  1/01
*DOCPREP SERVICES, INC.* FORM - DOTCA1-3005                  **Page 10 of 15**
                                                            **ORIGINAL**

Certified to be a true & correct copy of the original
Gateway Escrow Dept.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

LOAN NO.:  124489379

Initials   T  I.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
*DocPrep Services, Inc.* FORM - DOTCA1-3005
Page 11 of 15
ORIGINAL

Form 3005 1/01

Certified to be a true &
correct copy of the original

Gateway Escrow Dept.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

LOAN NO.:   124489379                                  Initials  T I.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3005  1/01
*DocPrep Services, Inc.* FORM - DOTCA1-J3005              Page 12 of 15
                                                         ORIGINAL

Certified to be a true &
correct copy of the original

Gateway Escrow Dept.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligaton on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the Notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

LOAN NO.:   124489379

Initials  T  I.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

*DocPrep Services, Inc.* FORM - DOTCA1-3005                        Page 13 of 15
ORIGINAL

Form 3005  1/01

Certified to be a true &
correct copy of the original

Gateway Escrow Dept.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     _____ (Seal)
                                     TARA INDEN                -Borrower

_____     _____ (Seal)
                                                               -Borrower

                                     _____ (Seal)
                                                               -Borrower

                                     _____ (Seal)
                                                               -Borrower

                                     _____ (Seal)
                                                               -Borrower

                                     _____ (Seal)
                                                               -Borrower

LOAN NO.:   124489379

**CALIFORNIA**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**                    Form 3005  1/01
*DOCPREP SERVICES, INC.*  FORM - DOTCA1-3005                    Page 14 of 15
                                                               ORIGINAL

Certified to be a true &
correct copy of the original

Gateway Escrow Dept.

——————————— [Space Below This Line For Acknowledgment] ———————————

STATE OF CALIFORNIA
COUNTY OF Los Angeles                    } SS

On October 27, 2006 before me, Valerie Long, Notary Public personally appeared,
                                        (Notary Name and Title)
TARA INDEN

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

(Notarial Seal)

> VALERIE LONG
> Commission # 1695266
> Notary Public - California
> Los Angeles County
> My Comm. Expires Oct 19, 2010

> VALERIE LONG
> Commission # 1695266
> Notary Public - California
> Los Angeles County
> My Comm. Expires Oct 19, 2010

LOAN NO.:   124489379

## REQUEST FOR RECONVEYANCE

TO TRUSTEE:

    The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes,
together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby
directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey,
without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally
entitled thereto.

Dated: _____    _____

**CALIFORNIA**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**           Form 3005 1/01
*DOCPREP SERVICES, INC.* FORM - DOTCA1-3005                **Page 15 of 15**
                                                          **ORIGINAL**

Certified to be a true &
correct copy of the original

Gateway Escrow Dept.

A.3 my escrow originals

A copy of the Deed of Trust is attached to this Complaint as ìExhibit Aî and incorporated by reference here.

A copy of the Promissory Note is attached to this complaint as ìExhibit Bî and incorporated by this reference.

A copy of the "TILA Statement" is attached and marked as ìExhibit Cî and by this reference is incorporated herein.

A copy of the Defendant's "NOTICE TO QUIT" is attached and marked as ìExhibit Dî and by this reference is incorporated herein.

A copy of the Defendant's "Notice of Trustee's Sale" is attached and marked as ìExhibit Eî and by this reference is incorporated herein.

A copy of the Defendant's "ASSIGNMENT DEED OF TRUST" is attached and marked as ìExhibit Fî and by this reference is incorporated herein.

A copy of the Notice to Cease and Desist is attached to this Complaint as ìExhibit Gî and incorporated by reference here.

3.   Exhibit A

DEED OF TRUST

My originals unsigned by
me. Given to me at close of Escrow
I also do my initials completely different
than ALL signed & initialed documents
show through out this whole total of
ALL documents. I will share that info
further during jury trial. I have
tons of proof even from the time of this
allege - loan took place. Through the years
even to today. As well as prior to ALL of
this nightmare.

After Recording Return To:

PHH HOME LOANS, LLC
dba FIRST CAPITAL
1401 OCEAN AVENUE
SUITE 210
SANTA MONICA, CALIFORNIA 90401
LOAN NO.:   124489379

ESCROW NO.: 06088157-610
TITLE NO.: LA0662640
PARCEL NO.: 5556-009-005 ———————————— [SPACE ABOVE THIS LINE FOR RECORDING DATA] ——

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in  Sections  3,
11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in this document are  also  provided  in
Section 16.

(A)  "Security Instrument" means this document, which is dated _OCTOBER_____ 27_ , _2006_ , together
with all Riders to this document.

(B)  "Borrower" is
TARA INDEN, A SINGLE WOMAN
_____
_____
_____
_____
_____
Borrower is the trustor under this Security Instrument.

(C)  "Lender" is
PHH HOME LOANS, LLC dba FIRST CAPITAL
_____
Lender is a _A DELAWARE LIMITED LIABILITY COMPANY_____ organized and existing under the laws
of _____DELAWARE_____ . Lender's address is _____
_1401 OCEAN AVENUE SUITE 210; SANTA MONICA, CALIFORNIA 90401_____
_____ .Lender is the beneficiary under this Security Instrument.

(D)  "Trustee" is
EQUITY TITLE COMPANY
_____

(E)  "Note" means the promissory note signed by Borrower and dated _OCTOBER_____ 27_ , _2006_  The
Note states that Borrower owes Lender _____
SEVEN HUNDRED THOUSAND AND 00/100———————————————————— Dollars
(U.S. $ _____700,000.00____ ) plus interest.  Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than _NOVEMBER_____ 01_ , _2036_ .

Initials _____ _____ _____ _____ _____ _____

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3005 1/01
DOCPREP SERVICES, INC  FORM - DOTCAL-3005              Page 1 of 15
ORIGINAL

**(F)** "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

**(G)** "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H)** "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider    [ ] Condominium Rider    [ ] Second Home Rider

[ ] Balloon Rider    [ ] Planned Unit Development Rider    [ ] Assumption Rider

[ ] 1-4 Family Rider    [ ] Biweekly Payment Rider    [ ] Inter Vivos Trust Rider

[ ] Other(s) [specify]:

**(I)** "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** "**Community Association Dues, Fees and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** "**Escrow Items**" means those items that are described in Section 3.

**(M)** "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

LOAN NO.:   124489379        Initials _____ _____ _____ _____ _____ _____

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3005 1/01
*DOCPREP SERVICES INC. FORM - DOTCA3-3005*      Page 2 of 15
ORIGINAL

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the ___COUNTY_____

[Type of Recording Jurisdiction]

of ___LOS ANGELES_____

[Name of Recording Jurisdiction]

LOT 49 OF TRACT NO. 798, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PRE MAP RECORDED IN BOOK 16 PAGES 34 AND 35 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

ADJUSTABLE RATE RIDER(S) ATTACHED HERETO AND MADE A PART HEREOF

PARCEL NO.: 5556-009-005

which currently has the address of ___8353 YUCCA TRAIL_____ ;

[Street]

___LOS ANGELES_____ , California ___90046_____ ("Property Address"):

[City/Area]                                                    [Zip Code]

   **TOGETHER WITH** all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

   **BORROWER COVENANTS** that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

   **THIS SECURITY INSTRUMENT** combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

LOAN NO.:   124489379                         Initials ____  _____  _____  _____  _____  _____

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005  1/01
*Docuprep Services Inc.  FORM - DOTCA13005*                         Page 3 of 15
                                                                    ORIGINAL

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U. S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender:  (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15.  Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current.  Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted.  If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds.  Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current.  If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower.  If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure.  No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2.   Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:  (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full.  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3.   Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance

LOAN NO.:   124489379                                    Initials ____  ____  ____  ____  ____  ____

**CALIFORNIA**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                    **Form 3005  1/01**
*Docprep Services Inc.* form - DOTCA1-3005                    **Page 4 of 15**
                                   **ORIGINAL**

with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by,

LOAN NO.:   124489379                              Initials ____ _____ ____ _____ _____

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT              Form 3005  1/01
*DOCPREP SERVICES, INC.  FORM - DOTCA1-3005*                    Page 5 of 15
                                         ORIGINAL

or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been

LOAN NO.:   124489379                                    Initials _____ _____ _____ _____ _____ _____

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

*DOLLREF SERVICES INC  FORM - DOTCAI-3005*                Page 6 of 15                              Form 3005  1/01
ORIGINAL

completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

LOAN NO.:   124489379                                    Initials ____ ____ ____ ____ ____ ____

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3005  1/01
DOCPREP SERVICES, INC. FORM - DOTCAL-3005                Page 7 of 15
                                                        ORIGINAL

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

LOAN NO.:   124489379                                    Initials ____ ____ ____ ____ ____ ____

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005  1/01
*DocPrep Services Inc.* FORM - DOTCA1-3005                **Page 8 of 15**
                                                           **ORIGINAL**

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has-if any-with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

LOAN NO.:   124489379                                    Initials ___  ___  ___  ___  ___

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005  1/01
*DOCPREP SERVICES, INC.* FORM - DOTCA13005
Page 9 of 15
ORIGINAL

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

LOAN NO.:   124489379                                    Initials ____  ____  ____  ____  ____  ____

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3005 1/01
*DocPrep Services Inc  FORM - DOTCA1-3005*
Page 10 of 15
ORIGINAL

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

LOAN NO.:   124489379                                        Initials ___  ___  ___  ___  ___  ___

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3005  1/01
Doc Prep Services Inc. FORM - DOTCA1-3005                    Page 11 of 15
                                                            ORIGINAL

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19.  Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20.  Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

LOAN NO.:   124489379                                    Initials ____  ____  ____  ____  ____  ____

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligaton on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the Notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

LOAN NO.:   124489379                                    Initials _____ _____ _____ _____ _____ _____

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005  1/01
*Docprep Services Inc.* FORM - DOTCA1-3605                    Page 13 of 15
                                        ORIGINAL

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _____ (Seal)
                                                                                    -Borrower
                                        TARA INDEN

_____        _____ (Seal)
                                                                                    -Borrower

                                        _____ (Seal)
                                                                                    -Borrower

                                        _____ (Seal)
                                                                                    -Borrower

                                        _____ (Seal)
                                                                                    -Borrower

                                        _____ (Seal)
                                                                                    -Borrower

LOAN NO.:   124489379

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3005  1/01
DOCPREP SERVICES, INC.  FORM - DOTCA1-3005
                                        Page 14 of 15
                                        ORIGINAL

———————————————— [Space Below This Line For Acknowledgment] ————————————————

STATE OF CALIFORNIA
COUNTY OF _____                    } SS

On _____ before me, _____ personally appeared,
                                              (Notary Name and Title)
TARA INDEN _____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature_____

(Notarial Seal)

LOAN NO.:   124489379

## REQUEST FOR RECONVEYANCE

TO TRUSTEE:

    The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes,
together with all other indebtedness secured by this Deed of Trust, have been paid in full.  You are hereby
directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey,
without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally
entitled thereto.

Dated: _____          _____

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3005  1/01
DOCPREP SERVICES INC   FORM - DOTCA1-3005                        Page 15 of 15
                                                                ORIGINAL

A copy of the Deed of Trust is attached to this Complaint as ìExhibit Aî and incorporated by reference here.

A copy of the Promissory Note is attached to this complaint as ìExhibit Bî and incorporated by this reference.

A copy of the "TILA Statement" is attached and marked as ìExhibit Cî and by this reference is incorporated herein.

A copy of the Defendant's "NOTICE TO QUIT" is attached and marked as ìExhibit Dî and by this reference is incorporated herein.

A copy of the Defendant's "Notice of Trustee's Sale" is attached and marked as ìExhibit Eî and by this reference is incorporated herein.

A copy of the Defendant's "ASSIGNMENT DEED OF TRUST" is attached and marked as ìExhibit Fî and by this reference is incorporated herein.

A copy of the Notice to Cease and Desist is attached to this Complaint as ìExhibit Gî and incorporated by reference here.

1.

# Exhibit B

## Ocwen sent promissary Note

I asked for a receipt actually for my Note
not a copy of promissary Note.
The first page is 100% forged initials.
more will be said in Jury Trial.

6-814-AMW44-0001467-001-01-000-000-000-000



TARA INDEN
8353 YUCCA TRL
LOS ANGELES CA 90046-1955



06/05/2018

Account Number: 7190863501

Tara Inden
8353 Yucca Trl
Los Angeles, CA 90046-1955

**"Enclosed is the copy of the document you requested"**

# Ocwen Loan Servicing, LLC
### www.ocwen.com
*Helping Homeowners Is What We Do!*©

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: 800.746.2936

06/06/2018

Loan Number: 7190863501

Tara Inden
8353 Yucca Trail
Los Angeles, CA 90046-1955

**Property Address:**
8353 Yucca Trl
Los Angeles, CA 90046-1955



Dear   Tara Inden,

Ocwen Loan Servicing, LLC (OCWEN) would like to take this opportunity to thank you for your recent communication regarding the above referenced loan. We appreciate the time and effort on your part to bring your concern to our attention. Pursuant to your request, we have reviewed the loan and below is our response to the concern raised:

**Concern#1**

You requested us to provide with the copy of the Note document.

**Response**

The loan originated with PHH Home Loans, LLC dba First Capital, on 10/27/2006 for $700,000.00. As Ocwen was not involved in the origination of the loan, it would not be able to comment on concerns regarding the origination of the loan. Further, the information we provide in relation to the request is limited only to the servicing of the account.

A Note or a partial interest in the Note may be sold one or more times. Such a sale might result in a change in the entity known as the Loan Servicer that collects periodic payments due under the Note and Mortgage and performs other mortgage loan servicing obligations under the Note, Mortgage and Applicable Laws. Please note that we have no control over service transfer of loan. The transferring of loans is a common practice in the mortgage industry that does not affect the terms of the mortgage loan agreement.

We acquired the servicing rights of the loan from IndyMac Mortgage Servicers, a division of One West Bank on 09/30/2013, with the loan due for the 08/01/2009 payment and with unpaid principal balance of $700,000.00.

Ocwen is not required to provide you with the original wet ink signature loan documents. However, a request has been submitted to send the copies of the following documents to your attention. If you require any other loan documents, please contact our Customer Care Center at 1-800-746-2936 (Monday through Friday 8:00 am to 9:00 pm ET and Saturday 8:00 am to 5:00 pm ET).

1) Note
2) Mortgage

The foreclosure proceedings may be initiated on a loan, when the loan is past due for one twenty (120) or more

NMLS # 1852

RRCMAINLTRMM

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*



# Ocwen Loan Servicing, LLC
www.ocwen.com
*Helping Homeowners Is What We Do!®*

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: 800.746.2936

days. However, this varies by the State. A review of our records indicates that the foreclosure proceedings were initiated on 09/14/2017 as the loan was past due 08/01/2009 payment. As of 06/05/2018, the confirmed sale date is 06/28/2018.

As of 06/05/2018 the loan is due for 08/01/2009 payment. For any further information, you may contact our Customer Care Center at 1-800-746-2936 (Monday through Friday 8:00 am to 9:00 pm ET and Saturday 8:00 am to 5:00 pm ET).

We trust that the information provided has fully addressed your concern. Please note that you may request copies of collateral or certain loan documents that were relied upon in making this determination. You may receive these documents by sending in a written request to the Research Department at the address mentioned below. Please visit our website (www.ocwencustomers.com) which is available 24 hours a day, seven days a week, as many of the answers to your account specific questions may be found there. However, should you have any further questions in regards to this issue, please contact our Research Department at 800.241.9960. Research Department works from Monday through Friday 9 AM to 5 PM ET. After speaking with our Research Department, if you still have questions or concerns, please feel free to contact the OCWEN consumer advocate through OCWEN's website or by phone at 800.390.4656. OCWEN consumer advocate works from Monday – Friday 8:30 am – 5:30 pm EST. You may also send written correspondence to the following address:

Ocwen Loan Servicing, LLC
Attention: Research Department
P.O. Box 24736
West Palm Beach, FL 33416-4736
Fax Number: 407.737.6375

Sincerely,
Basavraj Bagale
Research Department
Ocwen Loan Servicing, LLC

NMLS # 1852

RRCMAINLTRMM

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

ORDER NO.:  LA0662640

EXHIBIT "A"

LOT 49 OF TRACT NO. 798, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 16 PAGES 34 AND 35 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

*Inden – 11/09*
*124489379*

# FIXED/ADJUSTABLE RATE NOTE
## INTEREST ONLY PERIOD
### (1-Year LIBOR Index - Rate Caps)
### (Assumable after Initial Period)
( 10 Year Interest Only Period)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

OCTOBER      27 ,      2006          SANTA MONICA                          , CALIFORNIA
    [Date]                           [City]                            [State]

8353 YUCCA TRAIL
LOS ANGELES, CALIFORNIA 90046

[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $      700,000.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
PHH HOME LOANS, LLC dba FIRST CAPITAL

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      5.750      %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.  PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month on the first day of the month beginning on      DECEMBER      01 ,      2006      I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and if the payment consists of both principal and interest, it will be applied to interest before Principal. If, on      NOVEMBER      01 ,      2036      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at      1401 OCEAN AVENUE, SUITE 210
SANTA MONICA, CALIFORNIA 90401
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Before the first fully amortizing principal and interest payment due date stated in subsection (C) below (the "First P&I Payment Due Date"), my monthly payments will be only for the interest due on the unpaid principal of this Note. Each of my initial monthly payments will be in the amount of U.S. $      3,354.17      . This amount may change in accordance with subsection (C) below.

LOAN NO.:  124489379

IndyMac Bank
Fixed/Adjustable Rate Note - 1 Yr. Libor Index - Interest Only Period
8480830 (0507)
*DOCPREP SERVICES, INC.* FORM - IB5600N-8508

Initials _____ ___ ___ ___

Page 1 of 5
VMP Mortgage Solutions, Inc. (800)521-7291
**ORIGINAL**

Form 5600
6/05

**(C) Monthly Payment Changes**

The First P&I Payment Due Date is          DECEMBER     01 , 2016.

Prior to the First P&I Payment Due Date, my monthly payment may change to reflect changes in the interest rate I must pay in accordance with Section 4 of this Note or to reflect changes in the unpaid principal of my loan in accordance with Section 5 of this Note. Notwithstanding the provisions of Section 4(C) of this Note to the contrary, prior to the First P&I Payment Due Date the Note Holder will not include in the monthly payment any amount to repay the unpaid principal. Before the effective date of any change in my monthly payment, the Note Holder will deliver or mail to me a notice of the change in accordance with Section 8 of this Note. The notice will include the title and telephone number of a person who will answer any question I may have regarding the notice.

Beginning with the First P&I Payment Due Date, my monthly payment will change to an amount sufficient to repay the principal and interest at the rate described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Sections 4 and 5 of this Note.

## 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the first day of     NOVEMBER     , 2011          , and may change on that day every 12th month thereafter. Each date on which my interest rate could change is called an "Interest Change Date."

**(B) The Index**

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding     TWO AND 750/1000          percentage point(s) (     2.750     %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Interest Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Interest Change Date will not be greater than     10.750   % or less than     2.750   %. Thereafter, my interest rate will never be increased or decreased on any single Interest Change Date by more than     TWO          percentage point(s) (     2.000     %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than     10.750   %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Interest Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to the changes.

LOAN NO.:  124489379

8480830 (0807)

*DOCPREP SERVICES, INC.  FORM - 1B5600N-8508*

Initials ___ ___ ___ ___ ___

Page 2 of 5
**ORIGINAL**

Form 5600
6/05

If I make a partial Prepayment during the period ending with the due date of my last interest only monthly payment, my partial Prepayment will reduce the amount of my monthly payment. If I make a partial Prepayment after the last interest only monthly payment, my partial Prepayment may reduce the amount of my monthly payments beginning with the monthly payment due after the Interest Change Date following the partial Prepayment. After the first Interest Change Date, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.   BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of          15          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     5.000     % of my overdue payment of interest during the period when my payment is interest only, and of principal and interest after that. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.   WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

LOAN NO.:   124489379

8480830 (0507)

Initials  ⌐  ⌐.

**11.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**(A) UNTIL MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:**

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**(B) AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:**

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

LOAN NO.:   124489379

8480830 (0507)
*DOCPREP SERVICES, INC.* FORM - FB5602N-8508

Page 4 of 5
ORIGINAL

Initials  T. I. _____ _____ _____

Form 5600
6/05

My originals
υ.s.mail
B.a Note & Rate Rider

A copy of the Deed of Trust is attached to this Complaint as ìExhibit Aî and incorporated by reference here.

A copy of the Promissory Note is attached to this complaint as ìExhibit Bî and incorporated by this reference.

A copy of the "TILA Statement" is attached and marked as ìExhibit Cî and by this reference is incorporated herein.

A copy of the Defendant's "NOTICE TO QUIT" is attached and marked as ìExhibit Dî and by this reference is incorporated herein.

A copy of the Defendant's "Notice of Trustee's Sale" is attached and marked as ìExhibit Eî and by this reference is incorporated herein.

A copy of the Defendant's "ASSIGNMENT DEED OF TRUST" is attached and marked as ìExhibit Fî and by this reference is incorporated herein.

A copy of the Notice to Cease and Desist is attached to this Complaint as ìExhibit Gî and incorporated by reference here.

2.

# Exhibit B
## Promissary Note

My original NOT copy given to me upon closing Escrow. Notice ALL documents were not initialed nor signed by me.

Also I was given The 1st original page of my promissary Note. the rest to follow was the Rate Rider info ALSO my signage is missing.

ALL originals. Not copies!

# FIXED/ADJUSTABLE RATE NOTE
# INTEREST ONLY PERIOD
### (1-Year LIBOR Index - Rate Caps)
### (Assumable after Initial Period)
### (   10   Year Interest Only Period)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

OCTOBER         27 ,      2006         SANTA MONICA                          , CALIFORNIA
　　　　[Date]                                 [City]                                                    [State]
8353 YUCCA TRAIL
LOS ANGELES, CALIFORNIA 90046

[Property Address]

## 1.   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $         700,000.00         (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
　　PHH HOME LOANS, LLC dba FIRST CAPITAL

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.   INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of         5.750         %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.   PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month on the first day of the month beginning on         DECEMBER      01 , 2006
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and if the payment consists of both principal and interest, it will be applied to interest before Principal. If, on         NOVEMBER      01 , 2036      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at      1401 OCEAN AVENUE, SUITE 210
SANTA MONICA, CALIFORNIA 90401
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Before the first fully amortizing principal and interest payment due date stated in subsection (C) below (the "First P&I Payment Due Date"), my monthly payments will be only for the interest due on the unpaid principal of this Note.

Each of my initial monthly payments will be in the amount of U.S. $         3,354.17         . This amount may change in accordance with subsection (C) below.

LOAN NO.:   124489379

IndyMac Bank
**Fixed/Adjustable Rate Note - 1 Yr. Libor Index - Interest Only Period**
8480830 (0807)                                                                      Initials ____  ____  ____  ____  ____
*DOCPREP SERVICES, INC.* FORM - IB5600N-8508
Page 1 of 5
VMP Mortgage Solutions, Inc. (800)521-7291                                    **Form 6600**
**ORIGINAL**                                                                                  6/05

# FIXED/ADJUSTABLE  RATE  RIDER
# INTEREST ONLY PERIOD
### (1-Year LIBOR Index – Rate Caps)
### (Assumable after Initial Period)
### (   10   Year Interest Only Period)

THIS ADJUSTABLE RATE RIDER is made this **27TH** day of **OCTOBER**      , **2006**      , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Adjustable Rate Note (the "Note") to **PHH HOME LOANS, LLC dba FIRST CAPITAL**

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
**8353 YUCCA TRAIL**
**LOS ANGELES, CALIFORNIA 90046**

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of                **5.750**    %. The Note provides for changes in the interest rate and the monthly payments as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates

The interest rate I will pay may change on the first day of   **NOVEMBER**    , **2011**       , and may change on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

---

**LOAN NO.:  124489379**                              Initials ____ ____ ____ ____ ____ ____
**IndyMac Bank**
**Fixed/Adjustable Rate Rider - WSJ 1 Yr. Libor - Interest Only Period - Multistate**
8480831 (0506)                         Page 1 of 5                         Form 5601
                         VMP Mortgage Solutions, Inc.  (800)521-7291                  6/05
*DOCPREP SERVICES, INC.* FORM - IBS601N-8609                **ORIGINAL**

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market, as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND 750/1000** percentage point(s) ( **2.750** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **10.750** % or less than **2.750** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **TWO** percentage point(s) ( **2.000** %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **10.750** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

   **1.   UNTIL BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE IN EFFECT AS FOLLOWS:**

     **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

     If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

     If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

   **2.   AFTER BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B1 ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND THE PROVISIONS OF UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE AMENDED TO READ AS FOLLOWS:**

     **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials ____ ____ ____ ____ ____ ____

LOAN NO.:   124489379
8480831 (0506)
*DocPrep Services, Inc.*  FORM - IB5601N-8509

Page 3 of 5
**ORIGINAL**

Form **5601**
6/05

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Initials ____ ____ ____ ____ ____ ____

LOAN NO.:   124489379

8480831 (0506)                                    Page 4 of 5                          Form 5601

*Docprep Services, Inc.*  FORM - IB5601N-8509     ORIGINAL                            6/05

C.1 "TILA"

A copy of the Deed of Trust is attached to this Complaint as ìExhibit Aî and incorporated by reference here.

A copy of the Promissory Note is attached to this complaint as ìExhibit Bî and incorporated by this reference.

A copy of the "TILA Statement" is attached and marked as ìExhibit Cî and by this reference is incorporated herein.

A copy of the Defendant's "NOTICE TO QUIT" is attached and marked as ìExhibit Dî and by this reference is incorporated herein.

A copy of the Defendant's "Notice of Trustee's Sale" is attached and marked as ìExhibit Eî and by this reference is incorporated herein.

A copy of the Defendant's "ASSIGNMENT DEED OF TRUST" is attached and marked as ìExhibit Fî and by this reference is incorporated herein.

A copy of the Notice to Cease and Desist is attached to this Complaint as ìExhibit Gî and incorporated by reference here.

# Exhibit C
# TILA

Notice none signed by me.
original & copy from First Capital
&
then the 3rd is PHH.

Notice the substantial Amount owed & total payments that also vary in price.

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

| | | | |
|---|---|---|---|
| Applicants: | TARA INDEN | Prepared By: | FIRST CAPITAL |
| | | | 1401 OCEAN AVE, SUITE 210 |
| Property Address: | 8353 YUCCA TRAIL | | SANTA MONICA, CA 90401 |
| | LOS ANGELES, CA 90046 | | 310-458-0010 |
| Application No: | 06100154 | Date Prepared: | 10/12/2006 |

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you or on your behalf | The amount you will have paid after making all payments as scheduled |
| * 7.102 % | $ * 1,098,258.24 | $ * 689,183.50 | $ * 1,787,441.74 |

☐ **REQUIRED DEPOSIT:** The annual percentage rate does not take into account your required deposit
**PAYMENTS:** Your payment schedule will be:

| Number of Payments | Amount of Payments ** | When Payments Are Due | Number of Payments | Amount of Payments ** | When Payments Are Due | Number of Payments | Amount of Payments ** | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | Monthly Beginning: | | | Monthly Beginning: | | | Monthly Beginning: |
| 60 | 3,354.17 | 01/01/2007 | | | | | | |
| 299 | 5,287.30 | 01/01/2012 | | | | | | |
| 1 | 5,288.84 | 12/01/2036 | | | | | | |

☐ **DEMAND FEATURE:** This obligation has a demand feature.
☑ **VARIABLE RATE FEATURE:** This loan contains a variable rate feature. A variable rate disclosure has been provided earlier.
   **5/1 ARM INTERST ONLY**

**CREDIT LIFE/CREDIT DISABILITY:** Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost.

| Type | Premium | Signature | |
|---|---|---|---|
| Credit Life | | I want credit life insurance. | Signature: |
| Credit Disability | | I want credit disability insurance. | Signature: |
| Credit Life and Disability | | I want credit life and disability insurance. | Signature: |

**INSURANCE:** The following insurance is required to obtain credit:
☐ Credit life insurance  ☐ Credit disability  ☐ Property insurance  ☐ Flood insurance
You may obtain the insurance from anyone you want that is acceptable to creditor
☑ If you purchase  ☐ property  ☐ flood insurance from creditor you will pay $             for a one year term.
**SECURITY:** You are giving a security interest in: **8353 YUCCA TRAIL, LOS ANGELES CA 90046**
☑ The goods or property being purchased  ☐ Real property you already own.
**FILING FEES:** $      100.00
**LATE CHARGE:** If a payment is more than   15 days late, you will be charged   5.000 % of the payment
**PREPAYMENT:** If you pay off early, you
☑ may     ☐ will not   have to pay a penalty.
☐ may     ☑ will not   be entitled to a refund of part of the finance charge.
**ASSUMPTION:** Someone buying your property
☐ may     ☐ may, subject to conditions   ☑ may not   assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties
☑ * means an estimate   ☑ all dates and numerical disclosures except the late payment disclosures are estimates.
* * NOTE: The Payments shown above include reserve deposits for Mortgage Insurance (if applicable), but exclude Property Taxes and Insurance.

THE UNDERSIGNED ACKNOWLEDGES RECEIVING A COMPLETED COPY OF THIS DISCLOSURE.

| | | | | | |
|---|---|---|---|---|---|
| TARA INDEN | (Applicant) | (Date) | | (Applicant) | (Date) |
| | (Applicant) | (Date) | | (Applicant) | (Date) |
| | (Lender) | (Date) | | | |

Calyx Form - 8l.hp (02/95)

# FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

Creditor: FREMONT LOAN & INVESTMENT COMPANY

1401 OCEAN AVENUE, SUITE 210
SANTA MONICA, CALIFORNIA 90401          (310) 458-0010

Loan No.: 124489379
Loan Amount:      700,000.00
Interest Rate:   5.750

Borrower(s):
TARA INDEN

Property Address:
8353 YUCCA TRAIL; LOS ANGELES, CALIFORNIA 90046
Mailing address: 8353 YUCCA TRAIL; LOS ANGELES, CA 90046

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. |
| 7.351 % | $   1,214,939.41 | $   689,003.50 | $   1,903,942.91 |

Your payment schedule (not including reserve deposits for taxes and property insurance premiums) will be:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 60 | $    3,354.17 | DECEMBER   01, 2006 | | $ | |
| 60 | $    4,739.58 | DECEMBER   01, 2011 | | $ | |
| 239 | $    5,909.65 | DECEMBER   01, 2016 | | $ | |
| 1 | $    5,911.56 | NOVEMBER   01, 2036 | | $ | |
| | $ | | | $ | |
| | $ | | | $ | |

Demand Feature: This obligation (    ) has a demand feature      ( XX ) has no demand feature.

Variable Feature: This obligation ( XX ) has a variable rate feature    (    ) has no variable rate feature.

    If this loan contains a variable rate feature, disclosure about the variable rate feature have been provided to you earlier.  Please refer to your Adjustable Rate Mortgage Disclosure for additional information regarding interest rate and payment changes.

Security: You are giving a security interest in the property located at:
8353 YUCCA TRAIL; LOS ANGELES, CALIFORNIA 90046

Late Charge: If the payment is more than   15   days late, you will be charged   5.000 % of the payment of principal and interest.

Prepayment: If you pay off early, you
    ( XX ) may    (    ) will not    have to pay a penalty.
    (    ) may    ( XX ) will not    be entitled to a refund of part of the finance charge.

Insurance: You may obtain property insurance from anyone you want that is acceptable to the Creditor.
    Credit life and credit disability insurance (    ) are    ( XX ) are not    required to obtain credit.

Assumption: Someone buying your home  (    ) may not   (    ) may   ( XX ) may, subject to conditions,
    be allowed to assume the remainder of the mortgage on the original terms.

Filing Fees: $        350.00

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, prepayment refunds, penalties, security interest and the policy of the Creditor regarding assumption of the mortgage.

E - MEANS AN ESTIMATE

I (We) hereby acknowledge receiving and reading a completed copy of the disclosures made in this notice.

_____     _____
Borrower                                      Date
  TARA INDEN

_____     _____
Borrower                                      Date

_____     _____
Borrower                                      Date

_____     _____
Borrower                                      Date

_____     _____
Borrower                                      Date

DOCPREP SERVICES, INC.  FORM - TIL-0019

ORIGINAL

D.& Quit

A copy of the Deed of Trust is attached to this Complaint as ìExhibit Aî and incorporated by reference here.

A copy of the Promissory Note is attached to this complaint as ìExhibit Bî and incorporated by this reference.

A copy of the "TILA Statement" is attached and marked as ìExhibit Cî and by this reference is incorporated herein.

A copy of the Defendant's "NOTICE TO QUIT" is attached and marked as ìExhibit Dî and by this reference is incorporated herein.

A copy of the Defendant's "Notice of Trustee's Sale" is attached and marked as ìExhibit Eî and by this reference is incorporated herein.

A copy of the Defendant's "ASSIGNMENT DEED OF TRUST" is attached and marked as ìExhibit Fî and by this reference is incorporated herein.

A copy of the Notice to Cease and Desist is attached to this Complaint as ìExhibit Gî and incorporated by reference here.

1st <u>Notice to Quit</u> was taped to my Gate when I came home from work on 7/16/18

<u>Sables Servco</u> - Daniel Molina, Jr. card was left with documents taped to gate on my land.



**SABLES SERVCO**

**Daniel Molina, Jr.**

30 Corporate Park, Suite 450
Irvine, CA 92606
P: 714-625-3046
F: 714-908-7836
neworders@sablesservco.com
http://sablesservco.com

*Serving the Mortgage Servicing Industry & their Vendors*



# NOTICE TO QUIT

TO:        TARA INDEN AND ALL UNKNOWN OCCUPANTS

ADDRESS:   8353 YUCCA TRL, LOS ANGELES, CA 90046-1955
           (referred to below as the "above-described real property")

The above-described real property was sold in accordance with California Civil Code §2924, under a Power of Sale contained in a Deed of Trust securing said real property, and title under the foreclosure sale has been duly perfected by virtue of the Power of Sale in the Deed of Trust.

If you are a former owner of the above-described real property, or any person who is not a legitimate tenant or subtenant, **within three (3) days** after service of this notice, you are hereby required to quit and deliver possession of the above-described real property now held and occupied by you. This Notice to Quit specifically terminates any possessory interest you may have in the above-described real property. This Three (3) Day Notice to Quit is served upon you pursuant to California Code of Civil Procedure §1161a for the purpose of terminating occupancy of the above-described real property; or

If you are a tenant or a subtenant of the above-described real property you must vacate the above described real property within a **maximum of ninety (90) days or the term of your lease, whichever is longer,** after service of this Notice to Quit. If you believe you occupy the residence as a tenant or subtenant in possession please provide a copy of (1) your rental or lease agreement; (2) a utility bill; (3) recent rental receipts; (4) information on whether you receive assistance under the Department of Housing and Urban Development's Section 8 Housing Program; (5) a return phone number and the best time you can be reached; and (6) information on whether or not you are the child, spouse, or parent of the former owner of the property. If you occupy the property and you do not have a written rental or lease agreement please contact the below immediately to discuss. Please deliver the above documentation to our office within 48 hours of receipt of this notice. This ninety (90) Day Notice to Quit is served upon you pursuant to California Code of Civil Procedure §1161b. Therefore, you must vacate the above described real property **no later than ninety (90) days** after service of this Notice to Quit.

If within the applicable period as set forth above, you either fail to surrender possession OR you fail to provide evidence that you are a tenant pursuant to California Code of Civil Procedure §1161b, we will commence eviction proceedings against you to recover possession of the real property and for damages caused by your unlawful detention of the real property. UNLESS CONTACT IS MADE AND ACCEPTABLE EVIDENCE TO SHOW A LEGITIMATE TENANCY IS PRODUCED WITHIN THREE (3) DAYS OF THE SERVICE OF THIS NOTICE, THE EVICTION ACTION WILL BE COMMENCED AGAINST THE ABOVE NAMED OCCUPANTS BASED ON THE THREE (3) DAY PORTION OF THIS NOTICE.

This communication is for the purpose of collection a debt, and any information obtained from the occupant(s) will be used for that purpose. This notice is required by the provision of the Fair Debt Collections Practice Act and does not imply that we are attempting to collect money from anyone who has discharged the debt under the Bankruptcy Laws of the United States.

**If you are an active duty servicemember of the United States Armed Forces (Army, Navy, Air Force, Marine Corps, and Coast Guard), a reserve member of the Armed Forces while on active Federal duty, a member of the National Guard or Air National Guard in military service as defined under 50 U.S.C. § 3911(2)(A)(ii), an inductee serving with the Armed Forces, or the commissioned corps of the Public Health Service or the National Oceanic and Atmospheric Administration (NOAA), or a spouse or dependent of an active duty servicemember, you may be entitled to rights and protections as provided in the Servicemembers Civil Relief Act of 2003 (SCRA) (50 U.S.C. §3901 et seq .), including protection from eviction (50 U.S.C. § 3951(a)). In such case, you or your attorney should contact this law firm immediately and provide proof of active military service so that this firm can determine whether you fall under the protections of SCRA. Please contact the Eviction Department at (714) 794-1741.**

**NOTICE TO ANY RENTERS LIVING AT:**

8353 YUCCA TRL, LOS ANGELES, CA 90046-1955

The attached notice means that your home was recently sold in foreclosure and the new owner plans to evict you.

You should talk to a lawyer NOW to see what your rights are. You may receive court papers in a few days. If your name is on the papers it may hurt your credit if you do not respond and simply move out.

Also, if you do not respond within five days of receiving the papers, even if you are not named in the papers, you will likely lose any rights you may have. In some cases, you can respond without hurting your credit. You should ask a lawyer about it.

You may have the right to stay in your home for 90 days or longer, regardless of any deadlines stated on any attached papers. In some cases and in some cities with a "just cause for eviction law," you may not have to move at all. But you must take the proper legal steps in order to protect your rights.

How to Get Help

If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

NOTE:       IF YOU ARE NOT NAMED ABOVE, CONTACT THE UNDERSIGNED WITHIN 48
            HOURS AT (714) 794-1741. SE HABLA ESPAÑOL.


Dated:  July 13, 2018                    ZIEVE, BRODNAX & STEELE, LLP

                                         Jonathan J. Damen. (CA Bar #251869)
                                         Erin M. McCartney, Esq. (CA Bar #308803)
                                         Attorney for BANK OF AMERICA NATIONAL
18003201                                 ASSOCIATION A NATIONAL BANKING
                                         ASSOCIATION, AS SUCCESSOR IN INTEREST
                                         BY MERGER TO MERRILL LYNCH BANK
                                         U.S.A., A UTAH INDUSTRIAL BANK

                                         ZIEVE, BRODNAX & STEELE, LLP
                                         30 Corporate Park, Suite 450
                                         Irvine, CA 92606
                                         Phone: (714) 794-1741  Fax:  (714) 908-7836

"Notice to
Quit"
D.2   mailed

A copy of the Deed of Trust is attached to this Complaint as ìExhibit Aî and incorporated by reference here.

A copy of the Promissory Note is attached to this complaint as ìExhibit Bî and incorporated by this reference.

A copy of the "TILA Statement" is attached and marked as ìExhibit Cî and by this reference is incorporated herein.

A copy of the Defendant's "NOTICE TO QUIT" is attached and marked as ìExhibit Dî and by this reference is incorporated herein.

A copy of the Defendant's "Notice of Trustee's Sale" is attached and marked as ìExhibit Eî and by this reference is incorporated herein.

A copy of the Defendant's "ASSIGNMENT DEED OF TRUST" is attached and marked as ìExhibit Fî and by this reference is incorporated herein.

A copy of the Notice to Cease and Desist is attached to this Complaint as ìExhibit Gî and incorporated by reference here.

and I received Notice to Quit inside my own mailbox, post marked July 26th 2018. I retrieved it out of my mailbox on July 28th, 2018 after the mail was delivered Saturday July 28th 2018. No business card as previously was enclosed?

**Zieve, Brodnax & Steele, LLP**
30 Corporate Park
Suite 450
Irvine, CA 92606

90045-195553

SANTA ANA CA 926

26 JUL 2018   PM 2 L

TARA INDEN
8353 YUCCA TRL
LOS ANGELES CA 90046-1955

**Zieve, Brodnax & Steele, LLP**
30 Corporate Park
Suite 450
Irvine, CA 92606

90045-195553



SANTA ANA CA 926

26 JUL 2018   PM 2 L

ALL UNKNOWN OCCUPANTS
8353 YUCCA TRL
LOS ANGELES CA 90046-1955

## NOTICE TO QUIT

TO:               TARA INDEN AND ALL UNKNOWN OCCUPANTS

ADDRESS:       8353 YUCCA TRL, LOS ANGELES, CA 90046-1955
                (referred to below as the "above-described real property")

The above-described real property was sold in accordance with California Civil Code §2924, under a Power of Sale contained in a Deed of Trust securing said real property, and title under the foreclosure sale has been duly perfected by virtue of the Power of Sale in the Deed of Trust.

If you are a former owner of the above-described real property, or any person who is not a legitimate tenant or subtenant, **within three (3) days** after service of this notice, you are hereby required to quit and deliver possession of the above-described real property now held and occupied by you. This Notice to Quit specifically terminates any possessory interest you may have in the above-described real property. This Three (3) Day Notice to Quit is served upon you pursuant to California Code of Civil Procedure §1161a for the purpose of terminating occupancy of the above-described real property; or

If you are a tenant or a subtenant of the above-described real property you must vacate the above described real property within a **maximum of ninety (90) days or the term of your lease, whichever is longer,** after service of this Notice to Quit. If you believe you occupy the residence as a tenant or subtenant in possession please provide a copy of (1) your rental or lease agreement; (2) a utility bill; (3) recent rental receipts; (4) information on whether you receive assistance under the Department of Housing and Urban Development's Section 8 Housing Program; (5) a return phone number and the best time you can be reached; and (6) information on whether or not you are the child, spouse, or parent of the former owner of the property. If you occupy the property and you do not have a written rental or lease agreement please contact the below immediately to discuss. Please deliver the above documentation to our office within 48 hours of receipt of this notice. This ninety (90) Day Notice to Quit is served upon you pursuant to California Code of Civil Procedure §1161b. Therefore, you must vacate the above described real property **no later than ninety (90) days** after service of this Notice to Quit.

If within the applicable period as set forth above, you either fail to surrender possession OR you fail to provide evidence that you are a tenant pursuant to California Code of Civil Procedure §1161b, we will commence eviction proceedings against you to recover possession of the real property and for damages caused by your unlawful detention of the real property. UNLESS CONTACT IS MADE AND ACCEPTABLE EVIDENCE TO SHOW A LEGITIMATE TENANCY IS PRODUCED WITHIN THREE (3) DAYS OF THE SERVICE OF THIS NOTICE, THE EVICTION ACTION WILL BE COMMENCED AGAINST THE ABOVE NAMED OCCUPANTS BASED ON THE THREE (3) DAY PORTION OF THIS NOTICE.

This communication is for the purpose of collection a debt, and any information obtained from the occupant(s) will be used for that purpose. This notice is required by the provision of the Fair Debt Collections Practice Act and does not imply that we are attempting to collect money from anyone who has discharged the debt under the Bankruptcy Laws of the United States.

**If you are an active duty servicemember of the United States Armed Forces (Army, Navy, Air Force, Marine Corps, and Coast Guard), a reserve member of the Armed Forces while on active Federal duty, a member of the National Guard or Air National Guard in military service as defined under 50 U.S.C. § 3911(2)(A)(ii), an inductee serving with the Armed Forces, or the commissioned corps of the Public Health Service or the National Oceanic and Atmospheric Administration (NOAA), or a spouse or dependent of an active duty servicemember, you may be entitled to rights and protections as provided in the Servicemembers Civil Relief Act of 2003 (SCRA) (50 U.S.C. §3901 et seq .), including protection from eviction (50 U.S.C. § 3951(a)). In such case, you or your attorney should contact this law firm immediately and provide proof of active military service so that this firm can determine whether you fall under the protections of SCRA. Please contact the Eviction Department at (714) 794-1741.**

**NOTICE TO ANY RENTERS LIVING AT:**

8353 YUCCA TRL, LOS ANGELES, CA 90046-1955

The attached notice means that your home was recently sold in foreclosure and the new owner plans to evict you.

You should talk to a lawyer NOW to see what your rights are. You may receive court papers in a few days. If your name is on the papers it may hurt your credit if you do not respond and simply move out.

Also, if you do not respond within five days of receiving the papers, even if you are not named in the papers, you will likely lose any rights you may have. In some cases, you can respond without hurting your credit. You should ask a lawyer about it.

You may have the right to stay in your home for 90 days or longer, regardless of any deadlines stated on any attached papers. In some cases and in some cities with a "just cause for eviction law," you may not have to move at all. But you must take the proper legal steps in order to protect your rights.

How to Get Help

If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfor.ca.gov/selfhelp), or by contacting your local court or county bar association.

NOTE:          IF YOU ARE NOT NAMED ABOVE, CONTACT THE UNDERSIGNED WITHIN 48 HOURS AT (714) 794-1741. SE HABLA ESPAÑOL.

Dated: July 13, 2018

ZIEVE, BRODNAX & STEELE, LLP

Jonathan J. Damen. (CA Bar #251869)
~~Erin M. McCartney, Esq. (CA Bar #308803)~~
Attorney for BANK OF AMERICA NATIONAL
ASSOCIATION A NATIONAL BANKING
ASSOCIATION, AS SUCCESSOR IN INTEREST
BY MERGER TO MERRILL LYNCH BANK
U.S.A., A UTAH INDUSTRIAL BANK

18003201

ZIEVE, BRODNAX & STEELE, LLP
30 Corporate Park, Suite 450
Irvine, CA 92606
Phone: (714) 794-1741  Fax: (714) 908-7836

E.1   Sale 20/10

A copy of the Deed of Trust is attached to this Complaint as ìExhibit Aî and incorporated by reference here.

A copy of the Promissory Note is attached to this complaint as ìExhibit Bî and incorporated by this reference.

A copy of the "TILA Statement" is attached and marked as ìExhibit Cî and by this reference is incorporated herein.

A copy of the Defendant's "NOTICE TO QUIT" is attached and marked as ìExhibit Dî and by this reference is incorporated herein.

A copy of the Defendant's "Notice of Trustee's Sale" is attached and marked as ìExhibit Eî and by this reference is incorporated herein.

A copy of the Defendant's "ASSIGNMENT DEED OF TRUST" is attached and marked as ìExhibit Fî and by this reference is incorporated herein.

A copy of the Notice to Cease and Desist is attached to this Complaint as ìExhibit Gî and incorporated by reference here.



**Los Angeles County Registrar-Recorder/County Clerk**

DEAN C. LOGAN
Registrar-Recorder/County Clerk

If this document contains any restriction based on race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, that restriction violates state and federal fair housing laws and is void, and may be removed pursuant to Section 12956.2 of the Government Code. Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

RR18-1/18



**This page is part of your document - DO NOT DISCARD**

# 20100206387





**Pages:
0004**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**02/16/10 AT 08:00AM**

| | |
|---|---|
| FEES: | 24.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 24.00 |



**L E A D S H E E T**



201002160210009

00001928763



002540207

**SEQ:
21**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

t35

2

RECORDING REQUESTED BY



WHEN RECORDED MAIL TO

**REGIONAL TRUSTEE SERVICES CORPORATION**
616 1st Avenue, Suite 500
Seattle, WA 98104

02/16/2010

*20100206387*

090777860

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 10/27/2006.  UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

# NOTICE OF TRUSTEE'S SALE
### Trustee's Sale No. 05-FMB-86612

On March 9, 2010, at 10:30 AM, AT WEST SIDE TO THE LOS ANGELES COUNTY COURTHOUSE DIRECTLY FACING NORWALK BLVD., 12720 NORWALK BOULEVARD, in the City of NORWALK, County of LOS ANGELES, State of CALIFORNIA, REGIONAL SERVICE CORPORATION, a California corporation, as duly appointed Trustee under that certain Deed of Trust executed by TARA INDEN, A SINGLE WOMAN, as Trustors, recorded on 11/6/2006, as Instrument No. 06 2457290,  of Official Records in the office of the Recorder of LOS ANGELES County, State of CALIFORNIA, under the power of sale therein contained, WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER, for cash, or cashier's check (payable at the time of sale in lawful money of the United States) without warranty express or implied as to title, use, possession or encumbrances, all right, title and interest conveyed to and now held by it as such Trustee, in and to the following described property situated in the aforesaid County and State, to-wit:

TAX PARCEL NO.     5556-009-005

From information which the Trustee deems reliable, but for which Trustee makes no representation or warranty, the street address or other common designation of the above described property is purported to be 8353  YUCCA TRAIL  , LOS ANGELES, CA 90046.

Said property is being sold for the purpose of paying the obligations secured by said Deed of Trust, including fees and expenses of sale.  The total amount of the unpaid principal balance, interest thereon, together with reasonably estimated costs, expenses and advances at the time of the initial publication of the Notice of Trustee's Sale is $729,092.42.

In compliance with California Civil Code 2923.5(c), the mortgagee, trustee, beneficiary, or authorized agent declares: that it has contacted the borrower(s) to assess their financial situation and to explore options to avoid foreclosure; or that it has made efforts to contact the borrower(s) to assess their financial situation and to explore options to avoid foreclosure by one or more of the following methods: by telephone, by United States mail; either 1st class or certified; by overnight delivery; by personal delivery; by e-mail; by face to face meeting or the borrower has surrendered the property to the mortgagee, trustee, beneficiary, or authorized agent and that the compliance with Civil Code Section 2923.5 was made at least thirty (30) days prior to the date of this Notice of Sale.   The mortgagee, trustee, beneficiary, or authorized agent declares: it has obtained a final or temporary order of exemption and said order is current and valid as of the date of the Notice and the time frame set forth in California Civil Code § 2923.54 does not apply or California Civil Code § 2923.54 does not cover this loan.

219

CA NOTS

3

Dated: 2/14/2010

REGIONAL SERVICE CORPORATION, Trustee

By_____

JEAN GREAGOR, AUTHORIZED AGENT

Agent for Trustee:   AGENCY SALES AND POSTING
                     3210 EL CAMINO REAL, SUITE 200
                     IRVINE, CA 92602
Telephone Number:   (800) 542-2550
Sale Information:    (714) 730-2727 or http://www.rtrustee.com

CA NOTS

05-FMB-86612

4

<u>TARA INDEN</u>

### <u>DECLARATION PURSUANT TO CAL. CIV. CODE SECTION 2923.5(b):</u>

The undersigned mortgagee, beneficiary or authorized agent hereby declares under penalty of perjury, under the laws of the State of California, as follows:

☒    The mortgagee, beneficiary or authorized agent has contacted the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure in compliance with Cal. Civ. Code Section 2923.5. Thirty days or more have elapsed since the borrower was contacted.

☐    The mortgagee, beneficiary or authorized agent has tried with due diligence to contact the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by Cal. Civ. Code Section 2923.5. Thirty days or more have elapsed since these due diligence efforts were completed.

☐    The mortgagee, beneficiary or authorized agent was not required to comply with Cal. Civ. Code Section 2923.5 because:

     ☐    the borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary or authorized agent.

     ☐    the borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries.

     ☐    the borrower has filed for bankruptcy, and the proceedings have not yet been finalized.

**I certify under penalty of perjury under the laws of the State of California that the above is true and correct.**

INDYMAC MORTGAGE SERVICING

Date:  11/14/2009      By: _____

Molly Lewis

This is a true and certified copy of the record
if it bears the seal, imprinted in purple ink,
of the Registrar-Recorder/County Clerk

JUL 5 2018

Dean C. Logan   REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA

"Notice of Trustee's"
Sale 2012
E. 2.



**Los Angeles County Registrar-Recorder/County Clerk**

DEAN C. LOGAN
Registrar-Recorder/County Clerk

If this document contains any restriction based on race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, that restriction violates state and federal fair housing laws and is void, and may be removed pursuant to Section 12956.2 of the Government Code.  Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

RR18-1/18



**This page is part of your document - DO NOT DISCARD**



## 20121220310



**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**08/15/12 AT 08:00AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**



201208150200013

00006283472



004211226

**SEQ:**
**27**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

E460077

T35

RECORDING REQUESTED BY
Meridian Foreclosure Service
AND WHEN RECORDED MAIL TO
Meridian Foreclosure Service
3 SAN JOAQUIN PLAZA
SUITE 215
NEWPORT BEACH, CA  92660

Trustee Sale No. 22693CA
Title Order No. 120150488



08/15/2012

*20121220310*

Space above this line for recorder's use

# NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 10-27-2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On **09-05-2012 at 9:00 AM, MERIDIAN FORECLOSURE SERVICE f/k/a MTDS, INC., A CALIFORNIA CORPORATION DBA MERIDIAN TRUST DEED SERVICE** as the duly appointed Trustee under and pursuant to Deed of Trust Recorded **11-06-2006**, Book , Page , Instrument 06 2457290 of official records in the Office of the Recorder of LOS ANGELES County, California, executed by: **TARA INDEN, A SINGLE WOMAN** as Trustor, PHH **HOME LOANS, LLC DBA FIRST CAPITAL,** as Beneficiary, will sell at public auction sale to the highest bidder for cash, cashier's check drawn by a state or national bank, a cashier's check drawn by a state or federal credit union, or a cashier's check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state. Sale will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to the Deed of Trust. The sale will be made, but  without convenant or warranty, expressed or implied, regarding title, possesssion, or encumbrances, to pay the remaining principal sum of the notes (s) secured by the Deed of Trust, interest thereon, estimated fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.
Place of Sale: Behind the fountain located in Civic Center Plaza, 400 Civic Center Plaza Pomona, CA
Legal Description: AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

Amount of unpaid balance and other charges:**$852,605.82**
The street address and other common designation of the real property purported as:
8353 YUCCA TRAIL , LOS ANGELES, CA 90046
APN Number: 5556-009-005

**NOTICE TO POTENTIAL BIDDERS:**  If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction.  You will be bidding on a lien, not the property itself.  Placing the highest bid at trustee auction does not automatically entitle you to free and clear ownership of the property.  You should also be aware that the lien being auctioned off may be a junior lien.  If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property.  You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information.  If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

Title Order No. 120150488   Trustee Sale No. 22693CA

*3*

**NOTICE TO PROPERTY OWNER:**  The sale date shown on this notice may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code.  The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale.  If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call (714) 573-1965 or visit this Internet Web site www. Priorityposting.com , using the file number assigned to this case 22693CA.  Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site.  The best way to verify postponement information is to attend the scheduled sale.

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.  The property heretofore described is being sold "as is".

DATE: 08-15-2012

MERIDIAN FORECLOSURE SERVICE f/k/a MTDS, INC., A CALIFORNIA CORPORATION DBA MERIDIAN TRUST DEED SERVICE
3 SAN JOAQUIN PLAZA, SUITE 215, NEWPORT BEACH, CA 92660
Sales Line: (714) 573-1965 OR (702) 586-4500

JESSE J. FERNANDEZ, PUBLICATION LEAD

MERIDIAN FORECLOSURE SERVICE IS ASSISTING THE BENEFICIARY TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

"Ivory of Trustees"
Sale 2013
E.3



Los Angeles County Registrar-Recorder/County Clerk

DEAN C. LOGAN
Registrar-Recorder/County Clerk

If this document contains any restriction based on race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, that restriction violates state and federal fair housing laws and is void, and may be removed pursuant to Section 12956.2 of the Government Code.  Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

RR18-1/18



**This page is part of your document - DO NOT DISCARD**



# 20131397555



**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**09/26/13 AT 08:00AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**



201309260130011

00008353789



005796978

**SEQ:**
**04**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

t35

RECORDING REQUESTED BY
**Meridian Foreclosure Service**
AND WHEN RECORDED MAIL TO

**Meridian Foreclosure Service**
3 SAN JOAQUIN PLAZA
SUITE 215
NEWPORT BEACH, CA 92660
Trustee Sale No. 22693CA
Title Order No. 120150488


09/26/2013
*20131397555*

Space above this line for recorder's use

## NOTICE OF TRUSTEE'S SALE

_ATTENTION RECORDER_: THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY IS APPLICABLE TO THE NOTICE PROVIDED TO THE TRUSTOR ONLY

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 10-27-2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On **10-21-2013 at 9:00 AM, MERIDIAN FORECLOSURE SERVICE f/k/a MTDS, INC., A CALIFORNIA CORPORATION DBA MERIDIAN TRUST DEED SERVICE** as the duly appointed Trustee under and pursuant to Deed of Trust Recorded **11-06-2006**, Book , Page , Instrument 06 2457290 of official records in the Office of the Recorder of LOS ANGELES County, California, executed by: **TARA INDEN, A SINGLE WOMAN** as Trustor, PHH HOME LOANS, LLC DBA FIRST CAPITAL, as Beneficiary, will sell at public auction sale to the highest bidder for cash, cashier's check drawn by a state or national bank, a cashier's check drawn by a state or federal credit union, or a cashier's check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state. Sale will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to the Deed of Trust. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the notes (s) secured by the Deed of Trust, interest thereon, estimated fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.
Place of Sale: Behind the fountain located in Civic Center Plaza, 400 Civic Center Plaza Pomona, CA
Legal Description: AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

The street address and other common designation of the real property purported as:
8353 YUCCA TRAIL , LOS ANGELES, CA 90046
APN Number: 5556-009-005

Amount of unpaid balance and other charges:$893,530.23

Title Order No. 120150488  Trustee Sale No. 22693CA

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not the property itself. Placing the highest bid at trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call (714) 573-1965 or visit this Internet Web site WWW.PRIORITYPOSTING.COM, using the file number assigned to this case 22693CA. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. In addition, the borrower on the loan shall be sent a written notice if the sale has been postponed for at least ten (10) business days. The best way to verify postponement information is to attend the scheduled sale.

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. The property heretofore described is being sold "as is".

DATE: 09-24-2013

MERIDIAN FORECLOSURE SERVICE f/k/a MTDS, INC., A CALIFORNIA CORPORATION DBA MERIDIAN TRUST DEED SERVICE
3 SAN JOAQUIN PLAZA, SUITE 215, NEWPORT BEACH, CA 92660
Sales Line: (714) 573-1965 OR (702) 586-4500

JESSE J. FERNANDEZ, PUBLICATION LEAD

MERIDIAN FORECLOSURE SERVICE IS
ASSISTING THE BENEFICIARY TO COLLECT A
DEBT AND ANY INFORMATION OBTAINED WILL
BE USED FOR THAT PURPOSE.

2

This is a true and certified copy of the record if it bears the seal, imprinted in purple ink, of the Registrar-Recorder/County Clerk

JUL 5 2018

Dean C. Logan REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA

Minute of Trustee's
Sale 2017
E.4



**Los Angeles County Registrar-Recorder/County Clerk**

DEAN C. LOGAN
Registrar-Recorder/County Clerk

If this document contains any restriction based on race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, that restriction violates state and federal fair housing laws and is void, and may be removed pursuant to Section 12956.2 of the Government Code.  Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

RR18-1/18

 

**This page is part of your document - DO NOT DISCARD**



## 20171498502



**Pages:**
**0004**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**12/26/17 AT 08:00AM**

| | |
|---|---|
| FEES: | 31.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 31.00 |



L E A D S H E E T



201712260290091

00014702266



008807812

**SEQ:**
**01**

SECURE - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**

E464776

TSG1706-CA-3202275_9a

TS No.: 2014-05481-CA

RECORDING REQUESTED BY
**Premium Title of California**

AND WHEN RECORDED MAIL TO:
**Western Progressive, LLC**
**Northpark Town Center**
**1000 Abernathy Rd. NE; Bldg. 400, Suite 200**
**Atlanta, GA 30328**

_____

SPACE ABOVE THIS LINE FOR RECORDER'S USE

T.S. No.: **2014-05481-CA**                          A.P.N.:**5556-009-005**
Property Address: **8353 Yucca Trail, Los Angeles, CA 90046**

## NOTICE OF TRUSTEE'S SALE

**PURSUANT TO CIVIL CODE § 2923.3(a) and (d), THE SUMMARY OF INFORMATION REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.**

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息摘要
참고사항. 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACION DE ESTE DOCUMENTO
TALA MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**IMPORTANT NOTICE TO PROPERTY OWNER:**
YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 10/27/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

Trustor: **Tara Inden, A Single Woman**
Duly Appointed Trustee: **Western Progressive, LLC**
Deed of Trust Recorded **11/06/2006** as Instrument No. **06 2457290** in Book ---, Page --- **and** of Official Records in the office of the Recorder of **Los Angeles** County, California
Date of Sale: **02/01/2018** at **11:00 AM**
Place of Sale:          **BEHIND THE FOUNTAIN LOCATED IN CIVIC CENTER PLAZA, 400 CIVIC CENTER PLAZA, POMONA, CA 91766**

Estimated amount of unpaid balance, reasonably estimated costs and other charges: **$1,032,639.86**

TS No.: 2014-05481-CA

# NOTICE OF TRUSTEE'S SALE

THE TRUSTEE WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK DRAWN ON A STATE OR NATIONAL BANK, A CHECK DRAWN BY A STATE OR FEDERAL CREDIT UNION, OR A CHECK DRAWN BY A STATE OR FEDERAL SAVINGS AND LOAN ASSOCIATION, A SAVINGS ASSOCIATION OR SAVINGS BANK SPECIFIED IN SECTION 5102 OF THE FINANCIAL CODE AND AUTHORIZED TO DO BUSINESS IN THIS STATE:

All right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described as:

More fully described in said Deed of Trust.

Street Address or other common designation of real property: **8353 Yucca Trail, Los Angeles, CA 90046** A.P.N.: **5556-009-005**

The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above.

The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is: $1,032,639.86.

Note: Because the Beneficiary reserves the right to bid less than the total debt owed, it is possible that at the time of the sale the opening bid may be less than the total debt.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

The beneficiary of the Deed of Trust has executed and delivered to the undersigned a written request to commence foreclosure, and the undersigned caused a Notice of Default and Election to Sell to be recorded in the county where the real property is located.

TS No.: 2014-05481-CA

## NOTICE OF TRUSTEE'S SALE

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on this property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call (866)-960-8299 or visit this Internet Web site http://www.altisource.com/MortgageServices/DefaultManagement/TrusteeServices.aspx using the file number assigned to this case **2014-05481-CA.** Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site.  The best way to verify postponement information is to attend the scheduled sale.

> **Western Progressive, LLC, as Trustee for Beneficiary**
> **C/o 1500 Palma Drive, Suite 237**
> **Ventura, CA 93003**
> **Sale Information Line:  (866) 960-8299**
> http://www.altisource.com/MortgageServices/DefaultManagement/TrusteeServices.aspx

Date: December 20, 2017          Tanesha Humphrey, Trustee Sale Assistant

**WESTERN PROGRESSIVE, LLC MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.**

«NOTRE n ...........S)
E.5 Side 2018



**Los Angeles County Registrar-Recorder/County Clerk**

DEAN C. LOGAN
Registrar-Recorder/County Clerk

If this document contains any restriction based on race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, that restriction violates state and federal fair housing laws and is void, and may be removed pursuant to Section 12956.2 of the Government Code. Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

RR18-1/18

 

**This page is part of your document - DO NOT DISCARD**



# 20180519030



**Pages:**
**0004**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**05/24/18 AT 08:00AM**

| | |
|---|---|
| FEES: | 33.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 108.00 |





**L E A D S H E E T**



201805240160022

00015283940



009105093

**SEQ:**
**01**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**

E452320

TSG1706-CA-...75_2fa1

TS No.: 2014-05481-CA

RECORDING REQUESTED BY
**Premium Title of California**

AND WHEN RECORDED MAIL TO:
**Western Progressive, LLC
Northpark Town Center
1000 Abernathy Rd NE; Bldg 400, Suite 200
Atlanta, GA 30328**

---

T.S. No.: **2014-05481-CA**

SPACE ABOVE THIS LINE FOR RECORDER'S USE

Property Address: **8353 Yucca Trail, Los Angeles, CA 90046**          A.P.N.:**5556-009-005**

## NOTICE OF TRUSTEE'S SALE

**PURSUANT TO CIVIL CODE § 2923.3(a) and (d), THE SUMMARY OF INFORMATION REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.**

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÒN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**IMPORTANT NOTICE TO PROPERTY OWNER:**
YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 10/27/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

Trustor: **Tara Inden, A Single Woman.**
Duly Appointed Trustee: **Western Progressive, LLC**
Deed of Trust Recorded **11/06/2006** as Instrument No. **06 2457290** in book ---, page--- **and** of Official Records in the office of the Recorder of **Los Angeles** County, California,
Date of Sale: **06/28/2018 at 11:00 AM**
Place of Sale:          **BEHIND THE FOUNTAIN LOCATED IN CIVIC CENTER PLAZA, 400 CIVIC CENTER PLAZA, POMONA, CA 91766**

Estimated amount of unpaid balance, reasonably estimated costs and other charges: **$ 1,045,882.11**

TS No.: 2014-05481-CA

# NOTICE OF TRUSTEE'S SALE

THE TRUSTEE WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK DRAWN ON A STATE OR NATIONAL BANK, A CHECK DRAWN BY A STATE OR FEDERAL CREDIT UNION, OR A CHECK DRAWN BY A STATE OR FEDERAL SAVINGS AND LOAN ASSOCIATION, A SAVINGS ASSOCIATION OR SAVINGS BANK SPECIFIED IN SECTION 5102 OF THE FINANCIAL CODE AND AUTHORIZED TO DO BUSINESS IN THIS STATE:

All right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described as:

More fully described in said Deed of Trust.

Street Address or other common designation of real property: **8353 Yucca Trail, Los Angeles, CA 90046** A.P.N.: **5556-009-005**

The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above.

The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is: $ 1,045,882.11.

**Note:** Because the Beneficiary reserves the right to bid less than the total debt owed, it is possible that at the time of the sale the opening bid may be less than the total debt.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

The beneficiary of the Deed of Trust has executed and delivered to the undersigned a written request to commence foreclosure, and the undersigned caused a Notice of Default and Election to Sell to be recorded in the county where the real property is located.

TS No.: 2014-05481-CA

## NOTICE OF TRUSTEE'S SALE

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on this property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call (866)-960-8299 or visit this Internet Web site http://www.altisource.com/MortgageServices/DefaultManagement/TrusteeServices.aspx using the file number assigned to this case 2014-05481-CA. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

> **Western Progressive, LLC, as Trustee for beneficiary**
> **C/o 1500 Palma Drive, Suite 237**
> **Ventura, CA 93003**
> **Sale Information Line:  (866) 960-8299**
> http://www.altisource.com/MortgageServices/DefaultManagement/TrusteeServices.aspx

Date: May 21, 2018

Iman Walcott, Trustee Sale Assistant

**WESTERN PROGRESSIVE, LLC MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.**

Version 1.1 CA NOS 0817

This is a true and certified copy of the record
if it bears the seal, imprinted in purple ink,
of the Registrar-Recorder/County Clerk

JUL 1 5 2018

Dean C. Logan   REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA

F.1  of Trust  County Certified

A copy of the Deed of Trust is attached to this Complaint as ìExhibit Aî and incorporated by reference here.

A copy of the Promissory Note is attached to this complaint as ìExhibit Bî and incorporated by this reference.

A copy of the "TILA Statement" is attached and marked as ìExhibit Cî and by this reference is incorporated herein.

A copy of the Defendant's "NOTICE TO QUIT" is attached and marked as ìExhibit Dî and by this reference is incorporated herein.

A copy of the Defendant's "Notice of Trustee's Sale" is attached and marked as ìExhibit Eî and by this reference is incorporated herein.

A copy of the Defendant's "ASSIGNMENT DEED OF TRUST" is attached and marked as ìExhibit Fî and by this reference is incorporated herein.

A copy of the Notice to Cease and Desist is attached to this Complaint as ìExhibit Gî and incorporated by reference here.

# Exhibit F

# ASSIGNMENT OF DEED
# OF TRUST

County Certified Sealed Copy.
The word "Concurrently" is on this
upper right corner shows raised Seal bar
code. Bottom left below shows different
Notary name then my unsigned originals
as well. Gregorio R Parcutela II

This has 4 parts →



**Los Angeles County Registrar-Recorder/County Clerk**

DEAN C. LOGAN
Registrar-Recorder/County Clerk

If this document contains any restriction based on race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, familial status, marital status, disability, genetic information, national origin, source of income as defined in subdivision (p) of Section 12955, or ancestry, that restriction violates state and federal fair housing laws and is void, and may be removed pursuant to Section 12956.2 of the Government Code.  Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

RR18-1/18

This page is part of your document - DO NOT DISCARD

06 2457291

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA

11/06/06 AT 08:00AM

**TITLE(S) :**



L E A D    S H E E T

| FEE | Code 01 - 07.00 | Code A017 - 001 | D.T.T. |
|-----|-----------------|-----------------|--------|
|     | Code 20 - 02.00 |                 |        |

CODE
20

CODE
19

CODE
9_____   *Grand Total = $9.00*                     *Page Count = 1*

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**      **Number of AIN's Shown**

**THIS FORM IS NOT TO BE DUPLICATED**

RECORDING REQUESTED BY
PHH HOME LOANS, LLC
dba FIRST CAPITAL

AND WHEN RECORDED MAIL TO
PHH HOME LOANS, LLC
dba FIRST CAPITAL

1401 OCEAN AVENUE
SUITE 210
SANTA MONICA, CALIFORNIA 90401
Loan No.        124489379
Title Order No.  LA0662640
Escrow No.      06088157-610
MIN NO.:    100055401244893790

**11/08/06**

**20062457291**

———— [SPACE ABOVE RESERVED FOR RECORDER] ————

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., A NOMINEE FOR
INDYMAC BANK, F.S.B. A FEDERALLY CHARTERED SAVINGS BANK
all beneficial interest under that certain Deed of Trust dated     OCTOBER     27 , 2006          executed by
TARA INDEN, A SINGLE WOMAN

EQUITY TITLE COMPANY                                                                        , Trustor to
                                                                                            , Trustee
and recorded as Instrument No.  *Concurrently*  on                in book            , page            , of
Official Records in the County Recorder's office of  LOS ANGELES                          County, California,
describing land therein as:

LOT 49 OF TRACT NO. 798, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES,
STATE OF CALIFORNIA, AS PRE MAP RECORDED IN BOOK 16 PAGES 34 AND 35 OF MAPS, IN
THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL NUMBER: 5556-009-005

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon
with interest, and all rights accrued or to accrue under said Deed of Trust.

PHH HOME LOANS, LLC
dba FIRST CAPITAL
A DELAWARE LIMITED LIABILITY COMPANY
(Assignor)

By:  _Belen P. Buluran_
      (Signature)   (Print Name & Title)
      BELEN P. BULURAN, CORRESPONDENT FUNDING SPECIALIST
By:  _____
      (Signature)   (Print Name & Title)

STATE OF   CALIFORNIA              , COUNTY OF  LOS ANGELES                    } SS.
On     11/3/06           before me,  GREGORIO R. PARCUTELA II          , a Notary Public , personally appeared
BELEN P. BULURAN, CORRESPONDENT FUNDING SPECIALIST
                                                   (Notary Name and Title)
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature  _____
              GREGORIO R. PARCUTELA II

GREGORIO R. PARCUTELA II
Commission # 1465215
Notary Public - California
Los Angeles County
My Comm. Expires Jan 26, 2008

MIN NO.:    100055401244893790
MERS Phone Number:   (888) 679-6377                                          (Notarial Seal)
DOCPREP SERVICES, INC. ASSNCA1 0041

This is a true and certified copy of the record
if it bears the seal, imprinted in purple ink,
of the Registrar-Recorder/County Clerk

JUL  5  2018

Dean C. Logan   REGISTRAR-RECORDER/COUNTY CLERK
LOS ANGELES COUNTY, CALIFORNIA

ASSIGNMENT OF DEED
OF TRUST
F-2 my escrow originals